In the Interest of: J.M.W.

No. ED 97077.

Missouri Court of Appeals, Eastern District, Division Two.

Jan. 24, 2012.

Linda Colburn, Clayton, MO, for Father.

Crista Lee Chenoweth–Beracha, St. Louis, MO, Juvenile Officer.

Celeste Leritz Endicott, Webster Groves, MO, GAL.

William P. Grant, St. Louis, MO, for Mother.

Chris Koster, Gary Lee Gardner, Jefferson City, MO, for Missouri Children's Division.

KENNETH M. ROMINES, J.

## Introduction

J.W. ("Father") appeals the judgment of the trial court terminating his parental rights to J.M.W. We find that the trial court did not err in its determination and affirm its judgment terminating Father's parental rights.[1]

## Background

Appellant J.W. ("Father") is the natural father of minor child J.M.W. ("J.M.W."), a daughter born on 3 September 2008. Following a hearing in June 2009, the trial court placed J.M.W. in protective custody because she was without proper care and custody from either parent. Father did not attend the hearing because he was incarcerated for a drug trafficking conviction. On 6 July 2009, the juvenile officer filed an amended petition alleging that J.M.W.'s mother could not keep the child because she was homeless. Father was ineligible because of his incarceration. The trial court determined that the allegations in the petition were true, issued a permanency plan for reunification, and placed J.M.W. in the legal custody of the Children's Division ("Division") for placement in foster care. Following a paternity test, Father was granted arranged, supervised visitation.

The trial court held a hearing in October 2009 and issued a permanency plan for termination of parental rights and adoption or guardianship by a fit relative. Father was granted visitation rights as arranged by the Division. A similar hearing and determination was held by the trial court in January 2010.

On 21 February 2010, Father signed a written services agreement with the Division. The agreement required that he call his social services worker collect once a month to obtain information about J.M.W.; write a letter to J.M.W. once a month and send a card on birthday and Easter; write his social worker monthly with information on the programs and treatment he was receiving in prison; inform his worker within five days if he is moved to another prison; cooperate with the recommendation of a psychologist for job training and counseling; sign a release form granting his worker access to information about programs in which he participated in prison.

On 9 September 2010, the Division filed a petition to terminate Mother and Father's parental rights. On 4 November 2010, the trial court held a hearing and ordered Father to complete a substance abuse evaluation. On 8 March 2011, Father was released from prison into a halfway house. The trial court held a TPR hearing on 11 March 2011.

At trial, the evidence showed that a social services worker first wrote Father that they had custody of J.M.W. in May or June of 2009. At this time, Father was incarcerated in the Bowling Green Correctional Facility. Father called the social services worker to inquire about the child. From June 2009 until May 2010, Father wrote letters to his child and social services worker but he wrote no more letters after May 2010. Father testified that he was aware that he was required to write J.M.W. once a month, and eventually testified that he "probably could" have afforded to buy one stamp a month.

Evidence also showed that Father did not inform his social worker when he was moved from the Tipton facility to the Algoa Correctional Facility. In April 2010, the Division sent him a letter seeking doc-

---

1. The parental rights of J.M.W.'s mother were also terminated; however, the mother does not appeal. We thus limit our discussion only to the facts and issues relating to Father.

umentation about programs in which he was participating in prison. Father did not respond. In May 2010, his worker called Algoa and learned that he had not participated in any program, and had not yet completed substance abuse treatment. Father's worker sent letters in January and February 2011 seeking information about any program he was participating in and still received no response. Father also did not sign a release as required by the services agreement. In short, due to Father's lack of communication, the Division received little to no information about Father's programs while he was in prison.[2]

On 3 May 2011, the trial court entered its judgment finding by clear, cogent, and convincing evidence that statutory grounds for termination existed under several subsections of Section 211.447.5. The trial court also found that termination was in the best interest of the child pursuant to Section 211.447.7. In connection with each of the statutory grounds for termination it found to exist, the lower court analyzed all statutorily-prescribed considerations, made findings with respect to each, and entered its termination judgment accordingly.

Father appeals, challenging the sufficiency of evidence presented below and the juvenile court's findings of fact and conclusions of law.

### Standard of Review

We will affirm the juvenile court's judgment terminating a parent's parental rights unless no substantial evidence supports it, it is contrary to the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We will not set aside a termination decree as "against the weight of the evidence" unless our review on appeal leaves us with "a firm belief that the decree or judgment is wrong." *Id.* And the reviewing court defers to the juvenile court's findings of fact and all reasonable inferences that can be drawn from those facts in the light most favorable to the juvenile court's judgment. *In re P.L.O.*, 131 S.W.3d 782, 789 (Mo. banc 2004). We will affirm the trial court's termination judgment if termination was supported by substantial evidence of any statutory ground that the court found to exist under Section 211.447.5. *In re K.A.W.*, 133 S.W.3d 1, 16 (Mo. banc 2004).

### Discussion

In Father's first four points on appeal, he claims the juvenile court erred in terminating his parental rights because there was insufficient evidence to support finding that any statutory grounds for termination existed.

*a. Findings Regarding Termination Pursuant to Section 211.447.5(3).*

Father argues in his third point on appeal that there was insufficient clear, cogent and convincing evidence to support the juvenile court's findings pursuant to Section 211.447.5(3).

Section 211.447.5(3) (2006) provides that a juvenile court may consider terminating parental rights to any child:

[who] has been under the jurisdiction of the juvenile court for a period of one year, and the court finds that the conditions which led to the assumption of jurisdiction still persist, or conditions of a potentially harmful nature continue to exist, that there is little likelihood that those conditions will be remedied at an early date so that the child can be returned to the parent in the near future, or the continuation of the parent-child relationship greatly diminishes the

---

**2.** Any additional facts will be provided as needed in the discussion section.

child's prospects for early integration into a stable and permanent home.

To permit termination, the statute requires the court to make findings on

(a) The terms of a social service plan entered into by the parent and the division and the extent to which the parties have made progress in complying with those terms;

(b) The success of failure of the juvenile officer, the division, or other agency to aid the parent on a continuing basis in adjusting his circumstances or conduct to provide a proper home for the child;

(c) A mental condition which is shown by competent evidence either to be permanent or such that there is no reasonable likelihood that the condition can be reversed and which renders the parent unable to knowingly provide the child the necessary care custody and control;

(d) Chemical dependency which prevents the parent from consistently providing the necessary care, custody and control of the child and which cannot be treated so as to enable the parent to consistently provide such care, custody and control.

§§ 211.447.5(3)(a)–(d); *K.A.W.*

■ First, the lower court found that J.M.W. had been under jurisdiction of the court more than one year. This is supported by the evidence given that the court granted protective custody in June 2009 and placed J.M.W. in the legal custody of the Division in July 2009. The court also found that that the conditions which led to the assumption of jurisdiction still persisted, or that conditions of a potentially harmful nature continued to exist and would not be soon remedied. The trial court analyzed the applicability of each consideration set out in the four statutory subsections and found that grounds for termination existed under subparagraphs (a), (b) and (d) above.

As to subparagraph (a) of the statute, the trial court found that Father had failed to maintain monthly contact with J.M.W., failed to inform the Division when he moved to a different prison, did not provide proof of participation in programs during incarceration, and did not continually send monthly letters to his child even though by his own testimony he could put money aside for stamps. Father signed a written service agreement with the Division on 21 February 2010. The terms of the agreement required that he (i) call the Division once a month to talk with a worker about J.M.W.; (ii) write a letter to J.M.W. once a month; (iii) send a card to J.M.W. and her birthday and Easter; (iv) write the Division monthly with information on the programs and treatment he was receiving in prison; (v) if moved to another prison, inform the Division within five days of the move; cooperate with the recommendation of a psychologist for job training and counseling; (vi) sign a release form to granting the Division access the programs he received in prison. On appeal, we defer to the lower court's opportunity to judge witnesses' credibility and resolve fact issues. *In re M.N.M.,* 906 S.W.2d 876, 878 (Mo.App. S.D.1995). Based on the testimony presented at trial, Father failed to follow nearly every one of the service requirements even though both the terms and consequences of failing to adhere were explained to him. As such, we should defer to the trial court's finding here.

As to subparagraph (b), the trial court found that "Father has failed on a continuing basis since 6 July 2009 to adjust his circumstances or conduct to provide a proper home for the child despite reasonable, continuing, and diligent efforts by the [Division] to aid him in doing so." This is

supported in the record. The Division repeatedly kept in contact with Father through numerous letters. On the one time the Division attempted to arrange visitation in prison, Father told them the wrong time. The Division wrote to Father 13 April 2010 to send verification of completion of services as required in the written services agreement, but Father did not comply. Though Father was informed of the importance of writing letters to his child, Father neglected to do so for ten months leading up to the TPR hearing.

Clearly the Division maintained contact with Father and attempted to get him to adjust his behavior to the terms of the agreement. Had he complied, Father would have been in a much better position to provide a proper home for J.M.W.

As to subparagraph (d), the trial found that "Father suffers from chemical dependency that prevents him from consistently providing the necessary care, custody and control for the child." Though Father did successfully complete a drug treatment program while in prison, the overwhelming evidence of Father's extensive history of drug abuse and trafficking requires that we defer to the trial court findings.

Father testified that he trafficked in drugs all his life. The record also shows the he was a habitual user. He was convicted of possession of PCP on 1 March 1987. He was convicted of possession of PCP on 2 October 1987. He received a conviction for possession of heroin on 20 July 1990, and he received another conviction for possession of PCP on 3 October 2002. Though Father testified that he quit using drugs in 2003, yet he was convicted of trafficking in the second degree on 4 November 2008. It was this conviction for which he was incarcerated during the current proceedings. Based on this evidence, it was not error for the trial court to find that Father had a chemical dependency affecting his ability to care for J.M.W.

In short, there is overwhelming evidence on the record both that the conditions which led to the assumption of J.M.W.'s care still exist, as do other potentially harmful conditions. Father did not follow the terms of the written service agreement which would have demonstrated commitment to J.M.W. This is particularly troubling since some of the terms he violated included merely writing to J.M.W. and calling the Division to get information on her. The Division clearly fulfilled its responsibilities by maintaining contact and trying to help him meet the requirements of the agreement, but Father still did not fully comply. Finally, Father's has a history of drug abuse and trafficking that spans decades. These conditions are not likely to be remedied soon, and to allow the parent-child relationship to continue would certainly diminish J.M.W.'s prospects for early integration into a stable home. As such, we should not say the trial court erred in finding these grounds sufficient to terminate Father's parental rights.

*b. Findings Respecting Termination Pursuant to Section 211.447.5(2), (1)(b), & (6).*

In Father's first, second, and fourth points on appeal, he contends that there was not sufficient evidence to support the juvenile court's finding grounds for termination under Sections 211.447.5(2), (1)(b), and (6). Since we find that there was substantial evidence here showing grounds for termination existed under Section 211.447.5(3) as discussed above, further review is unnecessary for us to uphold the juvenile court's judgment.

*c. Findings Respecting Considerations Set Forth in Section 211.447.7.*

In Father's final point on appeal, he argues that that trial court abused its

discretion in finding that the termination of his parental rights was in the best interests of J.M.W. Once the juvenile court has identified applicable statutory factors as grounds for terminating a parent's parental rights, Section 211.477.7 requires the court, before entering its termination judgment, to also analyze the following factors, where applicable:

(1) The emotional ties to the birth parent;

(2) The extent to which the parent has maintained regular visitation or other contact with the child;

(3) The extent of payment by the parent for the cost of care and maintenance of the child when financially able to do so, including the time that the child is in the custody of the division or other child-placing agency;

(4) Whether additional services would be likely to bring about lasting parental adjustment enabling a return of the child to the parent within an ascertainable period of time;

(5) The parent's disinterest in or lack of commitment to the child;

(6) The conviction of the parent of a felony offense that the court finds is of such a nature that the child will be deprived of a stable home for a period of years; provided, however, that incarceration in and of itself shall not be grounds for termination of parental rights;

(7) Deliberate acts of the parent or acts of another of which the parent knew or should have known that subjects the child to a substantial risk of physical or mental harm.

Here, the trial court's analysis of these factors supports its decision that termination was appropriate. The court found that: (i) no emotional ties existed between Father and J.M.W. due to lack of contact; (ii) Father was in jail for the majority of time J.M.W. was in care, but only sent one letter since 3 May 2010; (iii) Father has not paid even minimal support to J.M.W. since she has been in care; (iv) additional services are unlikely to enable placement within an ascertainable period of time because Father would have to complete drug screens and counseling, maintain stable housing and employment, make financial contributions to support, and begin regular visitation; (v) Father is interested in J.M.W. but lacks commitment as evidenced by failure to communicate with J.M.W., provide her support, and complete court-ordered services; (vi) Father has numerous felony convictions; and (vii) child would be at risk of physical and mental harm by Father if J.M.W. were returned to him based on his history with drug-related crimes and lack of housing or employment. Further review is therefore unnecessary for us to find that there was substantial evidence indicating termination was appropriate here.

### d. "Best Interests" Analysis

▮▮ After finding that statutory grounds for termination existed, the trial court was bound to further determine whether termination was in the child's best interest before entering judgment terminating Father's parental rights. When there is clear, cogent and convincing evidence that grounds exist for termination under Section 211.447.5, as in the present case, the trial court may terminate upon finding that termination is in the child's best interest. *K.A.W.*, 133 S.W.3d at 20–21. This finding must be by a preponderance of the evidence. *P.L.O.*, 131 S.W.3d at 789. Because the "best interests" determination is a subjective assessment of the totality of the evidence, it is not reweighed on appeal but reviewed for an abuse of discretion. *In re B.L.H.*, 158 S.W.3d 269, 283 (Mo.App. E.D.2005). An abuse of discretion occurs when the trial court's decision was clearly against the

logic of the circumstances and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration. *In re S.R.J., Jr.,* 250 S.W.3d 402, 406 (Mo.App. E.D.2008).

Here, the lower court found that, based on all the competent evidence presented at trial, entering judgment terminating Father's parental rights was in J.M.W.'s best interest. Based upon the foregoing points, we find that the trial court's judgment did not abuse its discretion.

### Conclusion

Based upon the foregoing reasons, we affirm the judgment of the lower court terminating parental rights.

KATHIANNE KNAUP CRANE, P.J. and ROBERT M. CLAYTON III, concur.