**In the Interest of G.G.B., C.T.B., and T.J.B., minors.**

**Juvenile Officer of St. Louis County, Missouri, Petitioner/Respondent,**

**v.**

**M.W., Respondent,**

and

**T.B., Respondent/Appellant.**

**No. ED 98879.**

Missouri Court of Appeals,
Eastern District,
Division Two.

March 5, 2013.

Alli Wolff, Family Court of St. Louis County, Clayton, MO, for Juvenile Officer, respondent.

Janice M. Lauer, St. Louis, MO, for respondent/appellant.

John Bird, Clayton, MO, Guardian ad Litem.

KATHIANNE KNAUP CRANE, Presiding Judge.

The juvenile officer filed three petitions to terminate the parental rights of father and mother to their three minor children pursuant to section 211.447 RSMo (Cum. Supp.2007),[1] naming both parents in each petition. After a hearing limited to the issue of termination of father's parental rights, the trial court entered "Supplemental Findings/Recommendation, Order, Judgment and Decree of Court" terminating father's parental rights to the children. It did not adjudicate the termination of mother's parental rights, and no judgment has been entered with respect to mother. We hold that the judgment terminating father's parental rights is a final judgment, order, or decree from which an appeal is allowed under section 211.261.1, and we affirm the judgment.

*Parties and Procedural Background*

T.B., (father) is the natural father of the minor children G.G.B., C.T.B., and T.J.B. (collectively, the children). M.W., (mother), is the natural mother of the children. G.G.B., a female child, was born on September 25, 1999; C.T.B., a male child, was born on June 16, 2004; and T.J.B., a female child, was born on November 14, 2008. Father and mother have never been married. Father and mother were not residing together during the pendency of these proceedings, and they were not in a continuing relationship.

On January 25, 2010, because of concerns about father's violent behavior, the Children's Division assisted mother in obtaining a restraining order against father to prevent him from visiting the home where mother and the children resided and from being in close contact with the children. On February 8, 2010, the juvenile officer filed petitions alleging that the children were without proper care and custody because father had punched G.G.B. in the eye. Following a hearing on April 13, 2010, the court found the allegations in the petitions to be true, took jurisdiction over the children pursuant to section 211.031, placed legal custody of the children with the Children's Division, and continued physical custody of the children with mother. On October 19, 2010, the court ordered the children to be removed from mother's home and placed in foster care. On May 19, 2011, the juvenile officer moved to modify a previous order of disposition on the ground that father had sexually abused G.G.B. during a period from January 1, 2008 to December 31, 2009. On February 1, 2012, the juvenile officer filed petitions to terminate the parental rights of father and mother with respect to each of the children. Thereafter, after a hearing, the court found the allegation of sexual abuse to be true. On June 26, 2012, the court held a hearing on the petitions to terminate the parental rights of father only and on July 10, 2012, entered its judgment terminating father's parental rights.

*Final Judgment under Section 211.261.1*

■ Before we consider the merits of this appeal, we must *sua sponte* determine

---

1. All further statutory references are to RSMo (Cum.Supp.2007) unless otherwise indicated.

whether we have authority to do so. *City of Portage Des Sioux v. Klaus Lambert*, 323 S.W.3d 462, 464 (Mo.App.2010); *In re C.A.D.*, 995 S.W.2d 21, 25 (Mo.App.1999). In this case, the issue is whether there is a "final judgment, order or decree that adversely affects" father under section 211.261.1. If there is no such judgment, we do not have the authority to decide the appeal on the merits.

■ In this case, although the petition sought to terminate the parental rights of both mother and father, the judgment terminated father's rights only. The termination of mother's parental rights had not been adjudicated at the time father's notice of appeal was filed, and it remained unadjudicated while this appeal was pending. As a result, there is no judgment adjudicating the rights and liabilities of all of the parties. In addition, the trial court did not enter its judgment terminating father's rights "upon an express determination that there is no just reason for delay" as specified in Rule 74.04(b).

In *In re C.M.L.*, 165 S.W.3d 522 (Mo. App.2005), the southern district of this court dismissed a father's appeal from an order terminating his parental rights on the grounds that the order was not final in that it did not adjudicate the parental rights of the mother, who was also named a party in the termination of parental rights petition, and it did not determine that no just reason for delay existed for purposes of entering judgment. *Id.* at 523. We have examined *C.M.L.* in the context of the rules and statutes governing appeals in juvenile cases. For the reasons that follow, we have determined that Rule 74.04 does not apply to ˙prevent father from appealing from the judgment terminating father's rights, even though the termination of mother's parental rights has not been adjudicated.

■ Appeals in juvenile cases are purely statutory. *See In re T.G.O.*, 360 S.W.3d 355, 357 (Mo.App.2012); Rule 120.01. The underlying case was a termination of parental rights proceeding under section 211.447. Section 211.261.1 governs appeals from orders terminating parental rights. With respect to parents, it provides: "An appeal shall be allowed to a parent from any final judgment, order or decree made under the provisions of this chapter which adversely affects him."

Rules 110 to 129 govern practice and procedure under Chapter 211. Rule 110.01. Rule 110.02 provides:

Rules 110 to 129 and Rule 130 are promulgated pursuant to the authority granted this Court by section 5 of article V of the Missouri Constitution and supersede all statutes and existing court rules inconsistent therewith. They are intended to provide for the just determination of proceedings in court, as that term is defined in Rule 110.04. Rules 110 to 129 and Rule 130 shall be construed to assure simplicity and uniformity in judicial procedure and fairness in the administration of justice and to conduce to the welfare of the juvenile and the best interests of the state.

Rule 110.03 provides that "[t]o the extent not inconsistent with these rules, the court shall be governed" by Rules 41–101 in proceedings under subdivisions (1) and (2) of subsection 1 of section 211.031. Rule 119 governs judgments, but it does not address a "final judgment."

■ What constitutes a final judgment for purposes of appeal in section 211.261 is not the same as a final judgment for purposes of appeal in civil cases. *In Interest of N.D.*, 857 S.W.2d 835 (Mo.App.1993) (*N.D. II*).

The very nature of a juvenile proceeding entails an on-going case which does not result in a "final" order, as that term is

generally defined. The juvenile court's exercise of continuing jurisdiction over a child, however, does not defeat a right to appeal.

*Id.* at 842.

*N.D. II* was decided in the following context. After the trial court took jurisdiction of the three children but before the petitions to terminate parental rights were filed, the trial court denied the mother's motion requesting visitation. The mother appealed from this order, and the appellate court dismissed the appeal for lack of jurisdiction. *In the Interest of N.D.*, 819 S.W.2d 790 (Mo.App.1991) (*N.D. I* ). After the mother's rights were terminated, she filed a second appeal. In this appeal, the appellate court revisited the question of the finality of the order denying visitation, and it held that the order was appealable even though the termination of parental rights proceeding had not been adjudicated. *N.D. II,* 857 S.W.2d at 842. The court recognized that previous cases had permitted appeals pursuant to section 211.261 of an adverse ruling on a parent's petition for modification of an order of custody, and of an order overruling a motion for rehearing of an order denying a parent's visitation. *See In Interest of M——S——M——*, 666 S.W.2d 800 (Mo. App.1984), and *In Interest of R.D.*, 842 S.W.2d 560, 560–61 (Mo.App.1992). It held that the denial of a motion requesting visitation was appealable under the rationale of those cases, even though the petition for termination was still pending. *N.D. II,* 857 S.W.2d at 842. The court held:

> There is no connection between the issues in the denial of visitation and the petition for termination of parental rights sufficient to require that they be combined in a single appeal. The rights at stake are significant and the best interest of children is served by resolv-

ing juvenile matters promptly, particularly when the effect of the order sought to be appealed is to deny contact between a parent and child.

*Id.*

This rationale was subsequently extended to a custody order awarding custody of a child who was within the jurisdiction of the court, which order had not been denominated as a judgment as required by Rule 74.01(a). *C.A.D.,* 995 S.W.2d at 26–28. In *C.A.D.,* the court first considered Rule 110.02, which "provides that the Juvenile Court Rules shall be construed to 'conduce to the welfare of the juvenile and the best interests of the state.'" *C.A.D.,* 995 S.W.2d at 27. It then observed that the "promotion of the best interest and welfare of the child is the primary consideration in custody cases in juvenile court." *Id.* The court explained:

> Custody issues should be disposed of as expeditiously as possible because they involve young developing children. Frequently, as in this case, we are dealing with a removal of a child from the actual physical and legal custody of the parents. Such cases implicate the fundamental right of parents to rear their children free from government interference. *In the Interest of M.D.S.*, 837 S.W.2d 338, 339–40 (Mo.App. W.D.1992). Delay in determining whether the custodial arrangement will be continued is detrimental to the best interests of the child and does not "conduce to the welfare of the juvenile and the best interests of the state." Rule 110.02.

*Id.* See also *In re N.B.*, 64 S.W.3d 907, 913 (Mo.App. S.D.2002), holding that a finding of jurisdiction and judgment of disposition pursuant to the provisions of sections 211.031 and 211.183 is appealable.

 None of the above cases involved a judgment terminating parental rights or the requirement under Rule 74.01 that "all

parties," as opposed to all claims, be disposed of. However, a judgment terminating parental rights is more invasive than a custody order. "Those faced with forced dissolution of their parental rights have a more critical need for protections than do those resisting state intervention into ongoing family affairs." *In re K.A.W.*, 133 S.W.3d 1, 12 (Mo. banc 2004). "The termination of parental rights is the most drastic intrusion into a parent-child relationship, and statutes providing for such termination must be construed strictly in favor of the parent and preservation of that relationship." *State ex rel. N.H.L. v. DePriest*, 136 S.W.3d 72, 73 (Mo. banc 2004). A parent whose parental rights have been terminated has the right to appeal. *Id.* Requiring a parent to forego an appeal until the other parent's parental rights have been adjudicated severely compromises a parent's right to appellate review. In addition, a delay in determining appeals from a judgment terminating parental rights is even more detrimental to the best interests of the child than a delay in determining appeals from pre-termination orders would be. For all of these reasons, application of Rule 74.04 to a termination of parental rights judgment is inconsistent with Rules 110–129 and as a result, does not govern judgments terminating parental rights.

In conclusion, section 211.161 allows a parent to appeal from a trial court judgment, order, or decree that adversely affects him. An order terminating a parent's rights falls within this definition, and the order may be appealed even if the rights of the other parent named in the petition have not been adjudicated and the trial court has not entered the judgment on a determination that there is no just reason for delay. Accordingly, we have

the authority to determine the merits of this appeal.

## DISCUSSION

### FATHER'S POINTS ON APPEAL

On appeal, father first challenges the trial court's denial of his motion for a continuance. He also challenges the sufficiency of the evidence to support the trial court's findings made pursuant to section 211.447.5(2) (abuse and neglect) and section 211.447.5(3) (failure-to-rectify), and he claims that the trial court abused its discretion in making findings pursuant to section 211.447.7.

### I. Denial of Father's Motion for Continuance

■ In his first point,[2] father asserts that the trial court abused its discretion and violated his right to due process in denying his motion for a continuance. We disagree.

■ We review the denial of a motion for continuance for abuse of discretion. *In re P.D.*, 144 S.W.3d 907, 911 (Mo.App. 2004). We will hold that a trial court abused its discretion in denying a motion for a continuance only in extreme cases where it clearly appears that the moving party is free of any dereliction. *Id.* "A trial court abuses its discretion 'when its ruling is clearly against the logic of the circumstances before it and is so unreasonable and arbitrary as to shock the sense of justice and indicates a lack of judicial consideration.'" *Id.* (quoting *Whitworth v. Jones*, 41 S.W.3d 625, 627 (Mo.App.2001)). *See also In re R.M.K.*, 330 S.W.3d 602, 604 (Mo.App.2011).

---

**2.** Designated "B" in father's brief.

*Procedural Background*

On June 26, 2012, the following persons appeared for trial and other proceedings: the Legal Officer; the Deputy Juvenile Officer; the Guardian Ad Litem (G.A.L.) for the minor children; mother's attorney; mother's G.A.L.; father's attorney; father's G.A.L.; the case manager; a representative of the Children's Division; and the foster parents. Father was not present. The court proceeded with other matters in the case. After those proceedings concluded, at approximately 10:15 a.m., the court called the matter for a hearing on termination of father's parental rights only. Father's counsel asked the court for a continuance because father was not present. Father's counsel explained:

> I realize that we were set for nine o'clock, but this is a new, physical setting for him. He is a little challenged in some areas and has trouble with transportation. He's not been known to miss court hearings in the past. He's been— I believe—it's been my recollection that he's been at all of them and has only missed one FST case that I know of. So with that, you know, given that record of attendance and the serious nature of these proceedings, I would ask for a continuance.

Father's GAL joined in the request. Father's GAL explained:

> It is a bit surprising that he is not here today despite—whether he's participated in various other aspects of the case, he has been one who has shown up to every scheduled hearing that I'm aware, at least everyone that I've been at.
>
> I know he has, from reading the reports, active warrants, although we've been discussing off the record trying to check to make sure if he hasn't been picked up. To our knowledge, he hasn't. I called down to 61 before we started this morning to check to see if he was there. The clerk advised me, via voice mail, that he has not shown up down there.
>
> But, nonetheless, as Ms. Lauer pointed out, this is a new facility he's not necessarily familiar with and is probably operating on limited means, but I am a bit concerned that this would be the first court date that he has missed. And given the seriousness of it, I would also join in the request for a continuance based on his best interest.

The court asked Michael Hickman, the case manager, what communication he had had with father. Mr. Hickman answered:

> I saw him yesterday afternoon at one clock in my office. He said he would be here. He did ask if he may be going to jail. I certainly could not advise him on that. So I'm believing that he made a conscious decision not to be here this morning. That's just my opinion. He did not tell me that.
>
> I'm concerned that he didn't come here this morning because he has a fear of going to jail. He does—he may be challenged, but I believe he can make it here. He knew exactly where it was. He mentioned the words "up the hill", "up the hill there", so I believe he should he here by 10:15 if he has a conscious decision to he here.

Mr. Hickman also said he had telephoned father at 9:15 a.m. that morning and left a message for him. The court took a recess until 10:35 a.m. During the recess, it was established that father had not gone to the family court building and he was not in the courthouse hallway. The court then denied father's counsel's request for a continuance.

During the course of his testimony, Mr. Hickman testified that when he spoke to father the day before, father said he would be in court, and Mr. Hickman gave father

the address and the location of the courthouse. He ensured that father understood that the proceeding would be in the main courthouse in St. Louis County, and he testified that father said, "That's the building up at the top of the hill, I know where it is." Father asked Mr. Hickman if Mr. Hickman thought father would go to jail. Mr. Hickman did not know why father asked about jail, and Mr. Hickman was not aware of any outstanding warrants for father. The court asked Mr. Hickman if during his meeting with father, anything was said or done to make father feel that his presence at the hearing would be unwelcome or that bad things would happen to him. Mr. Hickman confirmed that nothing like that had happened.

At 12:45 p.m., the legal officer rested, and the court made a record that father had never appeared. The court also confirmed that although a person in the family court building had agreed to call if father showed up there, no one had called. The court also advised that it had reviewed the case of *In re J.R.*, 347 S.W.3d 641 (Mo. App.2011), on the question of father's absence. It explained that given the nature of the evidence, the length of time the children had been in care, and the terms of the *J.R.* opinion, it was taking the matter under submission.

*Analysis*

Father contends that the denial of a continuance was reversible error under *J.R.*, 347 S.W.3d at 647. *J.R.* represents a highly unique situation in which the circumstance that the trial court had terminated parental rights for improper reasons was considered in determining whether the denial of a continuance was an abuse of discretion. *Id. J.R.* has no application in this case because the trial court did not terminate father's rights for improper reasons.

In *P.D.*, 144 S.W.3d at 911–12, we held the trial court did not abuse its discretion in denying mother's counsel's motion for continuance when no written motion complying with Rule 65.03 had been made, the mother did not appear for the hearing even though she was informed of the setting, and nothing in the record showed that the mother contacted the court on the date of hearing or at any time thereafter to explain her absence. We held that the mother was not free from dereliction. *Id.*

In this case, father did not file a written motion for a continuance as required by Rule 65.03. There was evidence that on the day before the hearing, father had told Mr. Hickman that he would be there, and Mr. Hickman confirmed that father knew the location of the hearing. Mr. Hickman opined that father had made a conscious choice not to appear. Nothing in the record shows that father made any effort to contact the court on the date of the hearing, or at any time thereafter, to inform it why he was unable to attend the hearing. On the other hand, the court confirmed that father knew of the setting and location, that he had not gone to another court building, and that no one had said anything to discourage him from appearing.

 Absent compliance with Rule 65.03, there can be no abuse of discretion in the denial of a continuance. *P.D.*, 144 S.W.3d at 911. *See also In re E.T.C.*, 141 S.W.3d 39, 45–46 (Mo.App.2004). In addition, even if counsel had filed a written motion in accord with Rule 65.03, this was not one of those "extreme cases in which it is clear that the movant is free from any dereliction," in which we would find an abuse of discretion. *P.D.*, 144 S.W.3d at 911. Finally, although father now argues that the denial of the continuance violated due process, he did not raise this constitutional issue at the hearing, thus waiving it. *See In re A.A.R.*, 71 S.W.3d 626, 634 (Mo.

App.2002); *In Interest of R.H.S.*, 737 S.W.2d 227, 233 (Mo.App.1987).

The trial court did not abuse its discretion in denying father's motion for a continuance. This point is denied.

## II. *Statutory Grounds for Termination*

In his second and third points,[3] father contends that there was insufficient clear, cogent, and convincing evidence to support the findings made pursuant to section 211.447.5(2) (abuse or neglect) or to support the findings made pursuant to section 211.447.5(3) (failure to rectify).

■ A court may terminate parental rights "if the court finds that the termination is in the best interest of the child and when it appears by clear, cogent and convincing evidence that grounds exist for termination pursuant to subsection 2, 4 or 5 of this section." Section 211.447.6. The state satisfies its burden when it presents clear, cogent, and convincing evidence that "instantly tilts the scales in favor of termination when weighed against the evidence in opposition and the finder of fact is left with the abiding conviction that the evidence is true." *K.A.W.*, 133 S.W.3d at 12; *In re W.C.*, 288 S.W.3d 787, 795 (Mo.App. 2009).

■ We review a judgment terminating parental rights under *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). *In re B.H.* 348 S.W.3d 770, 773 (Mo. banc 2011). Accordingly, we will affirm the judgment unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* We defer to the trial court's findings of fact, and we consider all evidence and reasonable inferences therefrom in the light most favorable to the judgment. *In re P.L.O.*, 131

S.W.3d 782, 789 (Mo. banc 2004), *cert. denied*, 543 U.S. 896, 125 S.Ct. 100, 160 L.Ed.2d 164 (2004).

### A. *Section 211.447.5(2)*

■ Section 211.447.5 allows a petition for termination of parental rights to be filed when *one* of the six enumerated grounds is met. Proof of only one of the statutory grounds alleged is sufficient to sustain the judgment. *P.L.O.*, 131 S.W.3d at 789. Since we find sufficient clear, cogent, and convincing evidence to support termination under section 211.447.5(3), we do not need to address the challenge to termination under section 211.447.5(2). *In re J.M.W.*, 360 S.W.3d 887, 892 (Mo.App. 2012). This point is denied as moot.

### B. *Section 211.447.5(3)*

For parental rights to be terminated under section 211.447.5(3), the child must have been under the jurisdiction of the juvenile court for a period of one year, and the court must find that

the conditions which led to the assumption of jurisdiction still persist, or conditions of a potentially harmful nature continue to exist, that there is little likelihood that those conditions will be remedied at an early date so that the child can be returned to the parent in the near future, or the continuation of the parent-child relationship greatly diminishes the child's prospects for early integration into a stable and permanent home.

Section 211.447.5(3). *See also In re B.J.K.*, 197 S.W.3d 237, 238 (Mo.App.2006). The court made these findings.

■ The statute also requires the court to make findings on four factors specified in subsections (a) through (d) of section 211.447.5(3) in determining whether to terminate parental rights under that

---

**3.** Designated "C" and "D" in father's brief.

section. Any one of those four factors "is a condition or act that may have a negative impact on a child, and if found to exist, should be considered in deciding whether grounds for termination under subsection (3) exist." *In re B.L.H.*, 158 S.W.3d 269, 278 (Mo.App.2005). The four factors are not separate grounds for termination in and of themselves, but rather they are categories of evidence that the trial court may consider with all other relevant evidence. *In re K.M.W.*, 342 S.W.3d 353, 360 (Mo.App.2011).

The court considered and made findings on factors (a) through (d) of section 211.447.5(3). In his argument under this point, father challenges the court's findings on subsections (a) and (b) of section 211.447.5(3). These factors are as follows:

(a) The terms of a social service plan entered into by the parent and the division and the extent to which the parties have made progress in complying with those terms;

(b) The success of failure of the juvenile officer, the division or other agency to aid the parent on a continuing basis in adjusting his circumstances or conduct to provide a proper home for the child;

Section 211.447.5(3)(a) and (b).

Although father challenges the court's findings on these subsections, he does not challenge the court's ultimate finding that the statutory grounds for termination set out in section 211.447.5(3) exist. Nevertheless, we will consider father's specific arguments.

▆▆▆ Father first argues that the judgment should be reversed because the court made its findings based on the "competent" evidence and not by the standard of "clear, cogent, and convincing evidence." We disagree. The judgment is divided into sections. The section containing the findings of fact begins with the following statement: "Based on the evidence adduced, the Court makes the following findings of fact by clear, cogent and convincing evidence."

▆▆▆ The court's subsequent reference to "competent evidence" is a reference to its admissibility, not its probative value. "Competent evidence" is evidence that is relevant and admissible and can establish the fact at issue. *Missouri Real Estate Appraisers v. Funk*, 306 S.W.3d 101, 106 (Mo.App.2010). Substantial evidence is competent evidence that, if believed, would have probative force upon the issues. *Id.* Likewise, "clear, cogent and convincing" evidence is also competent evidence that rises to the "clear, cogent and convincing" standard. The trial court's reference to "competent" evidence did not conflict with its statement that it was making its findings upon "clear, cogent and convincing evidence."

▆▆▆ We next consider father's challenge to specific findings under subsections (a) and (b). We address each subsection separately.

### 1. *211.447.5(3)(a)—Compliance with WSA*

With respect to factor (a), progress in complying with the terms of the WSA, the trial court found:

(a.) **Social Service Plan:** Based upon the competent evidence presented before the Court, the Court finds that father freely, voluntarily, and knowingly agreed to a social service plan with The Missouri Children's Division through its contract agency. The Written Service Agreement (WSA) was filed and approved by the Court. The Court also finds that father knew and understood the provisions of the WSA and the consequences of non-compliance. That

WSA required the father to visit with the children at least two times per month; to obtain suitable housing for himself and the children; to participate in individual therapy with regular attendance, to participate in substance abuse treatment, to secure employment and have a means of (financial) support, to submit to random drug UAs, to cooperate with and utilize the services offered by the Children's Division or the Court, to comply with any court orders currently in effect, to sign releases as requested, provide proof of attendance for any programs or classes and to notify the social worker of changes in his status within five days. The WSA required the Missouri Children's Division to arrange visits between father and the children at least twice per month upon proper request of the father; to provide father with information and referrals when requested, to help him comply with court orders and the WSA; to explain to father his parental obligations to support his children; to inform father as soon as possible of significant events in the children's life; to comply with any court orders in effect; and, to keep father informed of changes in the status of the social worker or supervisor assigned to the case.

Father signed his Written Service Agreement on January 27, 2011. Since then, by the undisputed evidence, father failed to comply with his requirements under this WSA; he failed to successfully complete substance abuse treatment or individual therapy, failed to support his children, failed to obtain suitable housing, did not visit his children regularly, and tested positive for controlled substances and failed to submit to requests for drug or alcohol screens as requested. To the minimal extent that father did comply with the service plan for some period of time, his efforts and those of the Missouri Division of Family Services proved unsuccessful in providing a continuing relationship between father and the children or reunifying father and the children. The court finds that the representatives of The Missouri Children's Division made reasonable efforts to fulfill their responsibilities under father's Written Service Plan.

### a. *Knowingly and Voluntarily*

Father argues that there was no evidence that father signed the WSA freely, voluntarily, or knowingly. We disagree. First, father does not point to any evidence indicating that his participation in the WSA was anything other than free, knowing, and voluntary. Next, there was substantial evidence supporting the court's finding. Mr. Hickman personally went over the terms of the WSA with father. Father agreed that he understood the goals of the agreement, and father said that he was committed to doing those goals. Father signed a WSA at each meeting with Mr. Hickman.

### b. *Evidence of Compliance with WSA*

Father argues that the trial court ignored the evidence that he complied with some parts of the WSA and took advantage of some of the services and programs offered by the Children's Division. We disagree. The court did acknowledge father's partial compliance, but found that he was not successful overall.

We briefly summarize the evidence on this issue, which shows that although father participated in and complied with some requirements of the WSA, his efforts were not sufficient to successfully address any of the issues that kept him from parenting the children. Although father completed a parenting class, he was not successful in addressing the issues that interfered with his ability to parent.

Father participated in and completed substance abuse therapy, but he did not complete the aftercare program and he tested positive in drug and alcohol screens after completing therapy. Mr. Hickman opined that father's substance abuse prevented him from being able to parent the children and was primarily responsible for his violent behavior, his inability to keep a job, and his inability to obtain housing. Father participated in individual therapy and completed a psychological evaluation, but he did not follow or complete the recommendations of the psychologist. He also participated in a batterer's intervention program, but he withdrew and was not successfully discharged from this program. Father did not visit with the children regularly, and his visits never progressed beyond supervised visits. Father provided "some coats, pajamas, socks and underwear" for the children on one occasion, Christmas presents on two occasions, and a basketball and toys on another occasion. However, father failed to provide any financial support for the children. Father never secured suitable housing for himself and the children. While the case was pending father was homeless. He stayed on the streets, in shelters, or at his brother's house, but he never had a residence where the children could be placed had he made progress in other areas.

■■■ "A lack of effort to comply with the plan and lack of success despite effort can predict future problems." *B.L.H.*, 158 S.W.3d at 280. A trial court may attach "little or no weight to infrequent visitations, communications, or contributions." *In re B.S.B.*, 76 S.W.3d 318, 326 (Mo.App.2002). Partial compliance with a service plan does not prevent a court from finding grounds for termination as a result of a failure to rectify conduct or conditions. *See In re Q.D.D.*, 144 S.W.3d 856, 861 (Mo.App.2004). "[C]ompliance

with a service agreement does not prevent the scales of justice from 'instantly *tilting*' in favor of the findings of the juvenile court." *Id.*

■■■ Father argues that his efforts at compliance, given his situation, constitute "significant progress in complying with his service agreement." He relies on *In the Interest of S.J.H.*, 124 S.W.3d 63 (Mo.App. 2004). In *S.J.H.*, the judgment of termination was reversed because the mother was making steady and continuing progress in six of the nine required areas set out in her service agreements. In contrast, in this case, although father complied with some aspects of the WSA and participated in some services, which the trial court did recognize, father did not make any progress in any of the significant areas in which he needed to show progress in order to remedy the harmful conditions preventing the children from being returned to him. At the time of the hearing he was unable to stay sober or provide housing, financial support, stability, or a safe environment for the children. The "failure to achieve progress towards the terms of a social service plan supports 'termination of parental rights when a dangerous condition is left uncorrected as a result.'" *In re I.G.P.*, 375 S.W.3d 112, 121 (Mo.App.2012).

In sum, the trial court's finding that father's efforts were unsuccessful in providing a continuing relationship between father and the children or reunifying father and the children was supported by substantial evidence.

### 2. *211.447.5(3)(b)—Agency Efforts*

With respect to factor (b), the efforts of the Children's Division to aid father, the court found:

(b.) **Agency Efforts:** Father has failed on a continuing basis to adjust his circumstances or conduct to provide a

proper home for the children despite reasonable, continuing and diligent efforts by The Missouri Children's Division to aid [him] in doing so.

■ Father's challenge to this finding is limited to his argument that the Children's Division did not make reasonable, continuing, and diligent efforts to aid father in finding housing because Mr. Hickman only referred father to St. Patrick's Center, gave him a printout with information about St. Patrick's Center, and did not even give him "a token referral." First, father mischaracterizes this evidence. When father was homeless, Mr. Hickman called St. Patrick's Center to make sure that father qualified for its housing referral program, then he printed the contact information for St. Patrick's from the internet and gave it to father, but father never followed up. Second, father mischaracterizes a "proper home." As used in subsection (b), a parent's ability to provide a "proper home" is more than the ability to provide a house; it includes the ability to refrain from illegal drug use, provide financial and emotional support, and provide a safe home environment. *See In re K.A.C.,* 246 S.W.3d 537, 544 (Mo.App. 2008). Father does not claim that the Children's Division failed to make reasonable, continuing, and diligent efforts to assist him in other ways to adjust his circumstances and conduct so that he could provide a proper home for the children. The Children's Division set up the three counseling programs for father at an agency accessible by public transportation and arranged visitation at a location also accessible by public transportation. It provided father with bus passes for both counseling and visitation, and it reminded him of his appointments. It held regular Family Support Team meetings with him.

■ The trial court's findings under subsections (a) and (b) of section 211.447.5(3) are supported by substantial evidence. The ultimate issue when applying section 211.447.4(3) is the "continued existence of an unremedied, neglectful situation." *In re S.R.J., Jr.,* 250 S.W.3d 402, 407 (Mo.App.2008) (quoting *In re C.F.C.,* 156 S.W.3d 422, 430 (Mo.App.2005)). The trial court did not err in finding clear, cogent, and convincing evidence to support termination for failure to rectify. This point is denied.

### III. *Section 211.447.7 Findings*

In his fourth point,[4] father contends that the trial court erred in terminating his parental rights "in that the court's findings pursuant to Section 211.447.7 were against the logic of the circumstances and an abuse of the court's discretion." Section 211.447.7 is not a separate ground for terminating parental rights. Rather, section 211.447.7(1)–(7) sets out seven factors that the trial court must evaluate and make findings on when appropriate and applicable to the case when terminating parental rights, as in this case, under subsections (2) or (3) of section 211.447.5. These factors are:

(1) The emotional ties to the birth parent;

(2) The extent to which the parent has maintained regular visitation or contact with the child;

(3) The extent of payment by the parent for the cost of care and maintenance of the child when financially able to do so including the time that the child is in the custody of the division or other child-placing agency;

(4) Whether additional services would be likely to bring about lasting parental adjustment enabling a return

---

4. Designated "E" in father's brief.

of the child to the parent within an ascertainable period of time;

(5) The parent's disinterest in or lack of commitment to the child;

(6) The conviction of the parent of a felony offense that the court finds is of such a nature that the child will be deprived of a stable home for a period of years; provided, however, that incarceration in and of itself shall not be grounds for termination of parental rights;

(7) Deliberate acts of the parent or acts of another of which the parent knew or should have known that subjects the child to a substantial risk of physical or mental harm.

Section 211.447.7(1)–(7).

In accordance with section 211.447.7, the trial court made the following findings on factors (1) through (5) with respect to the children:

(a.) By the undisputed, competent evidence, the court finds that all children have no emotional ties to their father.

(b.) Respondent–Father has failed to maintain regular visits or other contacts with [T.J.B.] and [C.T.B.]; to the extent he was permitted to visit with [G.G.B.], the court finds that father's visitation was not in [G.G.B.]'s best interest, was contraindicated by her therapist, and did not foster an appropriate paternal bond between father and child.

(c.) Respondent–Father, over the life of the case and especially over the past six months, has failed to contribute to the costs of care and maintenance for the children, although financially able to do so.

(d.) Based upon the evidence presented, the Court finds there is reasonable cause to believe that additional services would not be likely to bring about a lasting adjustment by the Respondent–Father so as to enable a return of any child to him within an ascertainable period of time; further, that additional services would not be likely to bring about a lasting adjustment by the Respondent–Father so as to enable the return of G.G.B., C.T.B., and T.J.B. to him within an ascertainable period of time.

(e.) Respondent–Father is disinterested in or lacks commitment to his children G.G.B., C.T.B., and T.J.B.

▮▮ Although father attacks specific findings, the findings on factors (1) through (7) are merely an aid to the "best interests" determination. *In re A.Y.M.,* 154 S.W.3d 412, 416 (Mo.App.2004). The determination of what is in a child's best interests is a subjective assessment based on the totality of the circumstances. *B.L.H.,* 158 S.W.3d at 282. Father has not challenged the best interests finding in the point relied on. Further, father has not made a totality of the circumstances argument about the best interests of the children, thus failing to preserve the ultimate issue of best interests for review. *See id.; see also In re L.M.,* 212 S.W.3d 177, 186–87 (Mo.App.2007); *A.Y.M.,* 154 S.W.3d at 417. However, we will *ex gratia* consider his arguments challenging the trial court's findings on the specific factors.

▮▮ Unlike section 211.447.5(3), section 211.447.7 " 'contains no mandatory language directing the juvenile court to make specific findings with respect to each of its subparagraphs.' " *In re A.S.O.,* 52 S.W.3d 59, 67 (Mo.App.2001) (quoting *In re N.M.J.,* 24 S.W.3d 771, 783 (Mo.App.

2000)).[5] Because findings under this section are discretionary, we review for abuse of discretion. *Id.*

### A. *211.447.7(1)—Emotional Ties*

 Father argues that the trial court's finding on factor (1) was insufficient in that it was a conclusory statement without a basis for its conclusion. This argument, which attacks the sufficiency of the finding, is not preserved because father did not file a motion to amend this judgment pursuant to Rule 78.07(c). *See In re K.M.C., III,* 223 S.W.3d 916, 926 (Mo.App.2007); *In re C.K.,* 221 S.W.3d 467, 470 (Mo.App.2007). Even if this argument had been preserved, the finding does not represent an abuse of discretion. Father does not suggest that there is any evidence in the record that does not support this conclusion.

Mr. Hickman testified that T.J.B. and C.T.B. had no emotional ties with father and gave examples of their disinterest in father. This testimony was not contradicted and father's attorney did not cross-examine Mr. Hickman about this. Father had no visits with G.G.B. during the pendency of the case. The trial court did not abuse its discretion in finding that the children lacked emotional ties with father.

### B. *2011.447.7(2)—Regular Visits or Contact*

Father's sole argument under this factor is that he "visited to the extent he was able to and to the extent visitation was not maintained, [father] was not present at the trial to offer testimony." Father does not argue that he did maintain regular visitation or demonstrate how the trial court abused its discretion in finding that he failed to maintain regular visits or contact with T.J.B. and C.T.B. Father had the opportunity to be present and testify at trial, and his attorney did not challenge the accuracy of Mr. Hickman's testimony about or his records of father's visitation. The trial court did not abuse its discretion in finding that father did not maintain regular visits or contact with the children.

### C. *211.447.7(3)—Financial Contributions or Support*

 Father argues that the trial court's finding on his failure to make financial contributions to the support of the children was against the logic of the circumstances and an abuse of discretion because he was unable to provide financial support for the children. He refers to evidence that during the two years the case was pending, he had been periodically unemployed, had been terminated from one job after 30 days, and at the time of trial was only working part-time at minimum wage. He also points to his homelessness, alcohol addiction, and IQ of 76 as factors showing his inability to support his children.

There was substantial evidence supporting the finding that father was financially able to contribute to the costs of care and maintenance of the children. At the time of the hearing, Father had been working for eleven to twelve months in a part-time job, and he had previously worked for ten years in one job. He lost a job after 30 days because he drank vodka on the job, a circumstance within his control. There was no evidence that father was incapable of holding employment, and in the absence of such evidence, the court can consider father financially able to support the children. *See In re A.H.,* 9 S.W.3d 56, 60 (Mo.App.2000). The fact that father was earning minimum wage and was working

---

5. *A.S.O.* interpreted section 211.447.6 RSMo (2000). This provision is now contained in section 211.447.7.

part-time does not prevent him from making "some" effort to assist in the support of the children. *In Interest of S.C.*, 914 S.W.2d 408, 412–413 (Mo.App.1996). Moreover, evidence that father was able to continue his drinking and marijuana habits supported the finding that he was able to provide financial support for his children. *Id.*

A parent has the responsibility to provide financial support even while the child is in the custody of the Children's Division and even if no support has been ordered. *A.H.*, 9 S.W.3d at 60. While the children were in custody of the Children's Division, father provided "some coats, pajamas, socks and underwear," Christmas presents on two different occasions, and toys on one other occasion. It was within the trial court's discretion to find that these were token gestures of support and give them little weight. *B.S.B.*, 76 S.W.3d at 326. The trial court did not abuse its discretion in finding that father failed to contribute to the costs of care and maintenance for the children although financially able to do so.

### D. *211.447.7(4)—Additional Services*

Father argues that the trial court's finding on this factor was insufficient because it did not include a factual basis. As in factor (1), this argument is not preserved because father did not file a motion to amend the judgment pursuant to Rule 78.07(c). *K.M.C., III*, 223 S.W.3d at 924; *C.K.*, 221 S.W.3d at 470.

Father had multiple opportunities to address the issues that prevented him from obtaining custody of the children. He was offered individual therapy, substance abuse therapy, and batterer's intervention therapy. Although he completed substance abuse therapy, he did not complete aftercare and relapsed soon after with multiple positive alcohol and marijuana screenings. Father withdrew from batterer's intervention therapy and was not successfully discharged. Mr. Hickman testified that there were no additional services that could be provided to father that were not already provided that would bring about any kind of lasting adjustment in father's performance. *See In re R.S.L.*, 241 S.W.3d 346, 357 (Mo.App.2007). Evidence that father has continuously failed to address the issues preventing the return of the children, despite being offered services that would enable him to do so, supports the finding that additional services would be unlikely to bring about lasting parental adjustment to enable the return of the children to father. *Id.* The trial court did not abuse its discretion in finding that no additional services would bring about a lasting adjustment.

### E. *211.447.7(5)—Parental Disinterest*

Father argues that the trial court's finding that he was disinterested in and lacked commitment to his children was against the logic of the circumstances and represented an abuse of discretion because he made significant progress in completing his service plan. We have addressed father's lack of progress in section II of this opinion. The trial court did not abuse its discretion finding that father failed to make substantial progress in his service plan.

The trial court did not abuse its discretion in making its findings pursuant to section 211.447.7. Point denied.

### Conclusion

The judgment of the trial court is affirmed.

MARY K. HOFF, J. and LISA VAN AMBURG, J., concur.