

# Missouri Court of Appeals

### Southern District

### Division Two

| | | |
|---|---|---|
| IN THE MATTER OF THE CARE | ) | |
| AND TREATMENT OF | ) | |
| CLAUDE HASTY, | ) | No. SD33018 |
| a/k/a CLAUDE J. HASTY, | ) | |
| a/k/a CLAUDE JOHN HASTY, | ) | **Filed: October 29, 2014** |
| | ) | |
| Respondent-Appellant. | ) | |

APPEAL FROM THE CIRCUIT COURT OF DENT COUNTY

Honorable Brandi L. Baird, Associate Circuit Judge

*(Before Sheffield, P.J., Lynch, J., and Burrell, J.)*

**<u>AFFIRMED</u>**

PER CURIAM.  Claude John Hasty ("Appellant") appeals the trial court's judgment committing him to secure confinement in the custody of the Department of Mental Health as a sexually violent predator.  *See* §§ 632.480 to 632.513.[1]  Appellant argues the trial court abused its discretion when it sustained an objection during his cross-examination of the State's expert witness.  Appellant has failed to show he was prejudiced by the alleged error, so we affirm the trial court's judgment.

---

[1] These statutes provide procedures to commit a person to the custody of the Department of Mental Health if they are found to be a sexually violent predator which, as relevant in the present case, the statute defines as "any person who suffers from a mental abnormality which makes the person more likely than not to engage in predatory acts of sexual violence if not confined in a secure facility and who . . . [h]as pled guilty or been found guilty in this state . . . of a sexually violent offense[.]"  § 632.480(5)(a).  Unless otherwise indicated, all statutory references are to RSMo Cum. Supp. (2013).

## Factual and Procedural Background

In 1999, Appellant was convicted of first-degree statutory sodomy and sentenced to 12 years incarceration. On January 5, 2012, the State filed a petition seeking to have Appellant civilly committed as a sexually violent predator. A jury trial was held on August 27 through 29, 2013.

Prior to trial, the State filed a motion in limine which sought to prohibit witnesses and attorneys from defining legal terms. The trial court granted the motion during the pretrial conference.

The State's case consisted primarily of the testimony of forensic psychologist Amy Swan ("Dr. Swan"). The State retained Dr. Swan to evaluate Appellant to determine if he was a sexually violent predator. Dr. Swan diagnosed Appellant with pedophilia and a "personality disorder not otherwise specified with antisocial features." She noted Appellant had been charged with molesting six girls between the ages of four and 12. There were also reports regarding other victims, although those reports did not result in arrests or the filing of charges. Dr. Swan believed Appellant's pedophilia gave him difficulty controlling his behaviors because Appellant continued to commit these acts even when he knew he would go to prison for it. His unstable lifestyle contributed to his difficulty in controlling his behavior. Dr. Swan opined that Appellant was more likely than not to commit another sexually violent offense if not confined to a secure facility based on her clinical judgment and the Static-99R actuarial instrument. In discussing the basis for her opinion, Dr. Swan admitted Appellant scored zero on the Static-99R actuarial instrument. Nevertheless, she did not believe the

2

numbers told the whole story because Appellant's other characteristics made him a statistical outlier.

During his cross-examination of Dr. Swan, Appellant's attorney questioned Dr. Swan regarding the meaning of Appellant's score on the Static-99R. She explained the Static-99R shows relative risk which is defined as the risk that Appellant would re-offend compared to the risk that the average offender would re-offend. Dr. Swan stated Appellant's score of zero was less than the score of the average offender. She further explained the score gave him a percentile ranking of 18.7. That ranking meant 10.3 percent of offenders "had the same risk, and 76.1 had higher risk." Based on those rankings, she stated Appellant's risk to be rearrested or reconvicted of a new sex offense "would be 15.8 percent at five years" and "24.3 percent at 10 years." Dr. Swan further admitted that more recent research would have changed those numbers to 7.2 percent and 12.5 percent respectively.

After concluding the discussion of the Static-99R, Appellant's attorney asked Dr. Swan whether she believed "more likely than not" was equal to any chance of re-offending. She disagreed. In the middle of the next question, the State's attorney objected. The attorneys approached the bench to discuss the issue with the judge out of the hearing of the jury. The State's attorney argued the previous question violated the motion in limine because Appellant's attorney was "trying to get her to -- get her to commit to a different definition or parts of the definition when it's not defined by the Missouri statute." The trial court sustained the objection. When the proceedings returned to open court,

3

Appellant's attorney asked Dr. Swan what "more likely than not" meant to her. Again, the State's attorney objected, and the trial court sustained the objection.

After Dr. Swan completed her testimony, Appellant made an offer of proof regarding the proposed cross-examination. During the offer of proof, Dr. Swan stated that in reaching her opinion she used the definition in the statute. Dr. Swan further stated that to her "more likely than not" is the same as "more probable than not" and the standard is not necessarily over 51 percent because "an individual can be more likely than not and not have a 50 percent chance as far as the actuarials go." She said she could not associate the phrase with a precise percentage.

Appellant presented the testimony of forensic psychologist Jeffrey Kline ("Dr. Kline"). Dr. Kline also evaluated Appellant to determine whether Appellant was a sexually violent predator. He agreed Appellant had pedophilia. He stated Appellant's score on the Static-99R actuarial instrument was zero. A little more than 7 percent of individuals with characteristics similar to Appellant and who attain that same score commit new offenses within 5 years. After 10 years, that number rises to 12 or 12 and a half percent. In contrast to Dr. Swan, he did not believe Appellant was more likely than not to engage in further acts of sexual violence.

The jury found Appellant to be a sexually violent predator, and the trial court ordered Appellant committed to the custody of the Department of Mental Health for control and treatment. Appellant appeals.

## Discussion

In his sole point on appeal, Appellant argues

> [t]he trial court abused its discretion in sustaining the State's objection to [Appellant's] cross-examination of Dr. Swan . . . in that [Appellant] had a right to question Dr. Swan regarding her interpretation of the legal term "more likely than not" because the term was not defined by statute or jury instruction, so the jury should have been permitted to hear Dr. Swan's testimony on the legal standard she used to render her opinion that [Appellant] was more likely than not to commit a future act of sexual violence if not confined to a secure facility.

This argument is without merit because it fails to explain how the exclusion of that testimony materially affected the merits of the action.

"The decision to admit or exclude evidence is within the sound discretion of the trial court because it is in a superior position to evaluate the proffered evidence in the context of the trial." ***Byers v. Cheng***, 238 S.W.3d 717, 726 (Mo. App. E.D. 2007).[2] An abuse of discretion occurs when "a trial court's ruling is clearly against the logic of the circumstances before the court and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration." ***In re Marriage of Patrick***, 201 S.W.3d 591, 599 (Mo. App. S.D. 2006). Furthermore, "[t]he appellant bears the burden of demonstrating error[,]" ***id.*** at 594 (quoting ***Taylor v. Taylor***, 25 S.W.3d 634, 638 (Mo. App. W.D. 2000)), and Appellant "cannot demonstrate error in the exclusion of evidence unless [he] also shows prejudice." ***Byers***, 238 S.W.3d at 726. That is, "an appellate court is not to reverse a judgment unless it believes the error committed by the trial court against the appellant materially affected

---

[2] We use civil cases regarding the exclusion of evidence to guide our decision in this case because the statutes allowing commitment of sexually violent predators are civil in nature. *See **Elliott v. State***, 215 S.W.3d 88, 93 (Mo. banc 2007).

5

the merits of the action." ***Lozano v. BNSF Ry. Co.***, 421 S.W.3d 448, 452 (Mo. banc 2014) (quoting ***Lewis v. Wahl***, 842 S.W.2d 82, 84-85 (Mo. banc 1992)).

Because reversible error cannot be demonstrated without a showing of prejudice, Missouri courts may hold a party has abandoned an issue where the party fails to address the issue of prejudice in his or her brief. ***Byers***, 238 S.W.3d at 726. Appellant has done so here; although he mentions the requirement for proving prejudice in his standard of review, he makes no argument explaining how the exclusion of the testimony made a difference in the outcome of this case.

Appellant's sole point is denied.

## Decision

The trial court's judgment is affirmed.



# Missouri Court of Appeals

### Southern District

### Division Two

<table>
<tr><td>IN THE MATTER OF THE CARE<br>AND TREATMENT OF<br>CLAUDE HASTY,<br>a/k/a CLAUDE J. HASTY,<br>a/k/a CLAUDE JOHN HASTY,<br><br>    Respondent-Appellant.</td><td>)<br>)<br>)<br>)<br>)<br>)<br>)</td><td>No. SD33018<br><br>**Filed: October 29, 2014**</td></tr>
</table>

APPEAL FROM THE CIRCUIT COURT OF DENT COUNTY

Honorable Brandi L. Baird, Associate Circuit Judge

## CONCURRING OPINION

I concur in the clearly reasoned principal opinion of the majority. I write separately, however, because I believe a few additional observations are appropriate.

Although it is proper to deny review where an appellant fails to make an argument regarding a portion of the analysis critical to a claim, our sister districts often note the rule before making a complete analysis of the issue. *See, e.g.*, ***Byers v. Cheng***, 238 S.W.3d 717, 726 (Mo. App. E.D. 2007); ***In re G.G.B.***, 394 S.W.3d 457, 472 (Mo. App. E.D. 2013). In cases where important interests are at stake, this practice assures the parties that their claims are receiving a minimum level of review in spite of any errors their attorneys may have made. I believe the liberty interest in a civil commitment proceeding under Sections 632.480 to 632.513 warrants such analysis.

1

In the present case, a review of the record convinces me Appellant was not prejudiced by the trial court's ruling.  "When expert testimony is excluded . . . our 'focus is not on whether the evidence was admissible but on whether the trial court abused its discretion in excluding the evidence.'" *In re Marriage of Patrick*, 201 S.W.3d 591, 595 (Mo. App. S.D. 2006) (quoting *Jones v. Grant*, 75 S.W.3d 858, 862 (Mo. App. W.D. 2002)).  Thus, Missouri courts typically do not find prejudice from exclusion of evidence when the evidence excluded would have been cumulative.  *Van Meter v. Dahlsten Truck Line, Inc.*, 943 S.W.2d 680, 682 (Mo. App. W.D. 1997).

Here, as Appellant's offer of proof shows, his goal in discussing Dr. Swan's definition of "more likely than not" was to demonstrate she did not use 50 percent as her standard.  Dr. Swan's testimony during the offer of proof was that the standard is not necessarily over 51 percent because "an individual can be more likely than not and not have a 50 percent chance as far as the actuarials go." However, during Appellant's cross-examination of Dr. Swan before the jury, Dr. Swan admitted Appellant's score on the actuarials was lower than average and reflected at most a 24.3 percent chance of being arrested or convicted of another offense within 10 years.  Because Appellant was permitted to adduce evidence similar to the testimony the trial court excluded, he was not prejudiced by the trial court's ruling.


MARY W. SHEFFIELD - CONCURRING OPINION AUTHOR