**In the Interest of: J.S.W.**

**No. ED 95390.**

Missouri Court of Appeals,
Eastern District,
Division One.

May 31, 2011.

882

Christopher M. Braeske, St. Louis, MO, for C.J.J. (Mother).

Allison Wolff, Clayton, MO, Juvenile Officer.

Jennifer R. Piper, St. Louis, MO, for J.S.W. (Minor Child).

John William Thompson, St. Louis, MO, for MO Children's Division.

KENNETH M. ROMINES, J.

### Introduction

C.J.J. ("Mother") appeals the judgment of the juvenile court terminating her parental rights to J.S.W. We find that the juvenile court did not err in its determination and affirm its judgment terminating Mother's parental rights.

### Background

Appellant C.J.J. ("Mother") is the natural mother of minor child J.S.W. ("J.S.W."), a son born on 4 May 2006. J.S.W. has been under the juvenile court's continuing jurisdiction since 28 November 2006, when he was adjudged abused or neglected pursuant to Section 211.031.1[1] on allegations that he, then an infant, failed to thrive in the care of the person with whom Mother had placed him while Mother was incarcerated. Mother remained incarcerated at the 28 November 2006 adjudication.

In May 2007, following her release from prison, Mother met with social worker Lynn Wolf to engage in various services, including parenting classes, personal counseling, and GED literacy services. Mother continued meeting with Ms. Wolf for approximately five months until Mother moved and was unable to attend further sessions. At that time, Ms. Wolf stated that she would not have recommended Mother as a safe parent to J.S.W., even if Mother had been able to secure stable housing and employment.

Mother met with additional counselors and supervisors affiliated with the Missouri Children's Division ("CD") pursuant to the terms of the Service Agreement made to prepare Mother to regain custody over J.S.W. Under those terms, Mother

---

1. All statutory references are to RSMO. (2008) unless otherwise indicated.

also successfully completed parenting classes and, while serving another term of imprisonment in 2008, obtained her GED. Mother failed, however, to satisfy the bulk of her obligations in the Service Agreement, including providing proof of obtaining and maintaining adequate housing and gainful employment and managing to stay out of jail.

On 3 December 2009, J.S.W.'s juvenile officer filed a petition to terminate Mother's parental rights. A TPR Hearing was held on 30 March 2010 and testimony was presented and taken under submission by the juvenile court.

On 29 June 2010, the juvenile court issued an order terminating Mother's parental rights to J.S.W. The court entered its judgment against Mother finding statutory grounds for termination existed under Sections 211.447.5(2), 211.447.5(3), and 211.447.7. In connection with each of the statutory grounds for termination it found to exist, the lower court analyzed all statutorily-prescribed considerations, made findings with respect to each, and entered its termination judgment accordingly.

Mother appeals, challenging the sufficiency of evidence presented below and the juvenile court's findings of fact and conclusions of law.

### Standard of Review

■ We will affirm the juvenile court's judgment terminating a parent's parental rights unless no substantial evidence supports it, it is contrary to the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We will not set aside a termination decree as "against the weight of the evidence" unless our review on appeal leaves us with "a firm belief that the decree or judgment is wrong." *Id.* And the reviewing court defers to the juvenile court's findings of fact and all reasonable inferences that can be drawn from those facts in the light most favorable to the juvenile court's judgment. *In re P.L.O.*, 131 S.W.3d 782, 789 (Mo. banc 2004).

■ We will affirm the trial court's termination judgment if termination was supported by substantial evidence of any statutory ground that the court found to exist under Section 211.447.5(2). *In re K.A.W.*, 133 S.W.3d 1, 16 (Mo. banc 2004).

### Discussion

In each of her three of her points on appeal, Mother claims the juvenile court erred in terminating her parental rights because there was insufficient evidence to support finding that any statutory grounds for termination existed. Mother further maintains that, in reaching its decision to terminate parental rights, the juvenile court relied upon outdated information.

*a. Findings Regarding Termination Pursuant to Section 211.447.5(2).*

Mother argues in her first point on appeal that there was insufficient clear, cogent and convincing evidence to supports the juvenile court's findings pursuant to Section 211.447.5(2).

Section 211.447.5(2) provides that a juvenile court may consider terminating parental rights to any child who has been abused or neglected. To permit termination, the statute requires the court first to find that the child has been abused or neglected and then to make specific findings about whether the following exist:

(a) A mental condition which is shown by competent evidence either to be permanent or such that there is no reasonable likelihood that the condition can be reversed and which renders the parent unable to knowingly

provide the child the necessary care custody and control; ·

(b) Chemical dependency which prevents the parent from consistently providing the necessary care, custody and control of the child and which cannot be treated so as to enable the parent to consistently provide such care, custody and control;

(c) A severe or recurrent acts of physical, emotional or sexual abuse toward the child or any child in the family by the parent, including acts of incest, or by another under circumstances that indicate the parent knew or should have known that such acts were being committed toward the child or any child in the family; or

(d) Repeated or continuous failure by the parent, although physically or financially able, to provide the child with adequate food, clothing, shelter, or education as defined by law, or other care and control necessary for the child's physical, mental or emotional health and development.

Sections 211.447.5(2)(a)–(d); *K.A.W.*, 133 S.W.3d at 16.

Here, the lower court found, first, that J.S.W. was "adjudicated as abused or neglected on 28 November 2006, on allegations that the then-infant child failed to thrive when left in the care of another person, with whom Mother had placed [him] while she was incarcerated." Though Mother was still incarcerated at the time of this adjudication, she appeared by counsel and, through counsel, admitted to the pled allegations. The validity of that adjudication was not challenged in these proceedings. The trial court then analyzed the applicability of each consideration set out in the four statutory subsections and found that grounds for termination existed under subparagraphs (a) and (d) above.

■ As to subparagraph (a) of the statute, the juvenile court found evidence showing that Mother suffers from an ongoing mental condition which renders her unable to knowingly provide the necessary care, custody and control to J.S.W. The court acknowledged that Mother's mental health condition could possibly diminish or be controlled, but that real progress would require a minimum of at least one or two years of intensive psychotherapy, psychiatric treatment, and intensive work by Mother in the therapeutic process. Further, the court found that Mother's past behavior militated against her likelihood of engaging in such services in the future, and that even if she were to engage in them with some success, such a speculative course of action would nevertheless unnecessarily delay permanency for her child, J.S.W.

■ On appeal, we defer to the lower court's opportunity to judge witnesses' credibility and resolve fact issues. *In re M.N.M.*, 906 S.W.2d 876, 878 (Mo.App. 1995). And, given Mother's extensive and continuing problems with engaging in episodic anger-induced violence and feloniously dangerous behaviors, we find that there is overwhelming evidence in the record to counter Mother's claim that she is mentally stable and behaviorally consistent enough at present for J.S.W. to be safely returned to her custody.

■ Moreover, the juvenile court found with respect to subparagraph (d) of Section 211.447.5(2) that additional grounds for termination existed. Here, the issue is "whether the parent has fulfilled [her] affirmative duty to support, communicate with, and visit [her] child." *S.M.H.*, 160 S.W.3d at 367. The court found grounds under this section for several reasons. First, Mother's employment status and income stability since first losing custody of

J.S.W. have been dubious, at best. Mother has repeatedly claimed to have some form of employment through the course of these termination proceedings, yet she has uniformly failed to accommodate repeated requests to provide a pay stub or other proof of her alleged employment. And even if, as she claims, Mother is and has been making her money in cash, and thus has not received pay stubs, her monetary contributions towards J.S.W.'s care while he has been living in the State's custody amount to nothing more than buying him some Christmas presents in December 2007.

In the span of nearly five years since losing custody over J.S.W., Mother's contribution of a few Christmas gifts in 2007 fails to satisfy any affirmative duty to support—especially when, as Mother maintains, she has earned a steady income throughout this time. Alternatively, if Mother's claims regarding her employment are untrue and she has lacked the financial ability to provide J.S.W. with financial support, she has nevertheless deliberately misrepresented her employment status and blushed over her unemployment, issues which blatantly violate her Service Agreement obligation to secure and maintain gainful employment. Either way, Mother's actions have failed to affirmatively fulfill any duties to provide support to J.S.W.

Mother maintains, however, that the trial court erred in its finding regarding her failure to support J.S.W. because it improperly relied upon outdated information about past incidents and behaviors in reaching this decision. Specifically, Mother notes the trial court's consideration of testimony given by therapists who had not treated her in years in contending that the trial court failed to assess her current circumstances in reaching its conclusions. We disagree.

Indeed, it is true that "[w]hile past behavior is one component of finding grounds for termination, the [trial] court must also assess the extent to which past behavior is predictive of similar issues in the future." *In re C.W.*, 211 S.W.3d 93, 98 (Mo. banc 2007). Accordingly, the trial court's findings supporting termination of parental rights must be updated to address the parent's current ability and willingness to parent as well as the potential for future harm. *Id.* Specifically, "[t]here must be a prospective analysis with some explicit consideration of whether past behaviors indicate future harm." *Id.* at 98–99. Under Section 211.447.5(2)(d), the trial court is required to consider whether there has been a "continuous or repeated failure" by the parent. In this case, the lower court did discuss Mother's past failure to provide J.S.W. with financial support, but it also made an affirmative finding indicating its consideration of whether Mother's past behaviors indicate future harm. The court expressly found that Mother's past behaviors were predictive of similar issues in the future.

*b. Findings Respecting Termination Pursuant to Section 211.447.5(3).*

In her second point on appeal, Mother contends that there was not sufficient evidence to support the juvenile court's finding grounds for termination under Section 211.447.5(3). Since we find that there was substantial evidence here showing grounds for termination existed under Section 211.447.5(2) as discussed above, further review is unnecessary for us to uphold the juvenile court's judgment termination.

*c. Findings Respecting Considerations Set Forth in Section 211.447.7.*

Once the juvenile court has identified applicable statutory factors as grounds for terminating a parent's parental rights, Section 211.477.7 requires the

court, before entering its termination judgment, to also analyze the following factors, where applicable:

(1) The emotional ties to the birth parent;

(2) The extent to which the parent has maintained regular visitation or other contact with the child;

(3) The extent of payment by the parent for the cost of care and maintenance of the child when financially able to do so, including the time that the child is in the custody of the division or other child-placing agency;

(4) Whether additional services would be likely to bring about lasting parental adjustment enabling a return of the child to the parent within an ascertainable period of time;

(5) The parent's disinterest in or lack of commitment to the child;

(6) The conviction of the parent of a felony offense that the court finds is of such a nature that the child will be deprived of a stable home for a period of years; provided, however, that incarceration in and of itself shall not be grounds for termination of parental rights;

(7) Deliberate acts of the parent or acts of another of which the parent knew or should have known that subjects the child to a substantial risk of physical or mental harm.

Here, the trial court's analysis of these factors supports its decision that termination was appropriate. The court found that no emotional ties existed between Mother and J.S.W., Mother made subpar efforts to maintain and seek out contact with J.S.W. when possible, Mother's effort at contributing financial support was trifling, and there was little hope for sufficiently addressing her pathologically violent mental disorder in the time necessary to prevent unnecessary delay to J.S.W.'s

future adjustment in a permanent home, especially given Mother's apparent lack of progress towards controlling her dangerous temper and violent outbursts. Further review is therefore unnecessary for us to find that there was substantial evidence indicating termination was appropriate here.

### d. "Best Interests" Analysis

■■■■■■ After finding that statutory grounds for termination existed, the trial court was bound to further determine whether termination was in the child's best interest before entering judgment terminating Mother's parental rights. When there is clear, cogent and convincing evidence that grounds exist for termination under Section 211.447.5, as in the present case, the trial court may terminate upon finding that termination is in the child's best interest. *K.A.W.*, 133 S.W.3d at 20–21. This finding must be by a preponderance of the evidence. *P.L.O.*, 131 S.W.3d at 789. Because the "best interests" determination is a subjective assessment of the totality of the evidence, it is not reweighed on appeal but reviewed for an abuse of discretion. *In re B.L.H.*, 158 S.W.3d 269, 283 (Mo.App. E.D.2005). An abuse of discretion occurs when the trial court's decision was clearly against the logic of the circumstances and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration. *In re S.R.J., Jr.*, 250 S.W.3d 402, 406 (Mo.App. E.D.2008).

Here, the lower court found that, based on all the competent evidence presented at trial, entering judgment terminating Mother's parental rights was in J.S.W.'s best interest. Based upon the foregoing points, we find that the trial court's judgment was plainly not an abuse of its discretion.

### Conclusion

Based upon the foregoing reasons, we affirm the judgment of the lower court terminating parental rights.

ROY L. RICHTER, C.J. and GARY DIAL, Sp. J., concur.