

# In the Missouri Court of Appeals
## Eastern District
### DIVISION FOUR

| | | |
|---|---|---|
| IN THE INTEREST OF: | ) | No. ED107179 |
| | ) | |
| R.D.M. | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| | ) | |
| | ) | Honorable Robin Ransom |
| | ) | |
| | ) | FILED: June 4, 2019 |

## Introduction

Ronald Mottley ("Father") appeals from the trial court's judgment terminating his parental rights over R.D.M. ("Child"). In his sole point on appeal, Father argues that the trial court erred in terminating his parental rights because Father did not voluntarily or intentionally relinquish custody of or contact with Child. Because we find Father abandoned Child under Section 211.447.5,[1] the trial court did not err in terminating Father's parental rights over Child. Accordingly, we affirm the judgment of the trial court.

## Factual and Procedural History

In 2016, the United States charged Father, a repeat offender, with the crime of felon in possession of a firearm. Father pleaded guilty and was sentenced to thirty-eight months in prison followed by two years of supervised release. Father anticipated release from prison on August

---

[1] All Section references are to RSMo (Cum. Supp. 2018), unless otherwise noted.

16, 2018. At that time, Father intended to live in a halfway house in St. Louis and then to reside with his sister. Father is Child's acknowledged and biological parent.

On August 2, 2016, the Children's Division of the Missouri Department of Social Services (the "Children's Division") took legal custody of Child—two years old at the time—after Child's mother left Child and Child's sibling alone for eight days without adult supervision. Between 2016 and 2018, Child and Child's sibling relocated multiple times within the foster-care system. Child indicated to the Children's Division worker that she had no emotional connection with Father.

The Children's Division sent Father three written letters explaining his rights as a parent, and detailing how to contact Child and the Children's Division during his incarceration. With each letter, the Children's Division included at least one self-addressed envelope for Father's return response.[2] Although Child was in foster care over two years, Father only wrote her one letter. In the attached letter to the Children's Division, Father expressed his desire to keep Child and suggested splitting Child from her sibling. Father also provided the Children's Division with his mother's and sister's contact information for possible foster placement for Child. While in prison, Father completed a parenting class and a release-preparation program.

Through no fault of Father, the paternity testing of Child took almost one year to complete. During that time Father expressed a desire for a personal visit with Child. The Children's Division did not facilitate visitation due to the incomplete paternity testing. Father did not formally request a visit with Child; he merely stated in the letter he wrote to the Children's Division that he would love to talk to Child or see her.

---

[2] The parties dispute whether the letters written to Father contained three self-addressed, stamped envelopes or just one. This discrepancy does not alter our analysis.

The State petitioned the trial court to terminate both Father's and Child's mother's parental rights on November 17, 2017.[3] On April 26, 2018, the trial court held a hearing for termination of Father's parental rights. At the termination hearing, Father testified that he spoke with Child through family members and told the Children's Division of these conversations. Father stated that he earned approximately forty dollars per month in prison through various employment opportunities. During this time, Father admittedly did not provide Child with monetary support, clothing, food, or gifts. Father maintained that he stopped receiving the Children's Division's letters containing self-addressed envelopes after he was transferred to federal prison and thus experienced trouble in contacting Child.

The trial court terminated Father's parental rights, finding that Father had abandoned Child. See Sections 211.444 RSMo (2016), 211.447.5(1). Specifically, the trial court found that Father had only sent one letter to Child and failed to provide Child with any gifts, clothing, food, financial support, or other supplies to provide for Child even though Father reported some income. Further, the trial court determined that Father's testimony was not believable regarding his alleged phone communication with Child. The trial court noted Father's desire to be Child's parent but found this desire did not overcome the abandonment finding. Further, the trial court remarked that Father failed to demonstrate that he has a relationship with Child or the ability, within the near future, to perform the duties of Child's parent. Father now appeals.

### Point on Appeal

In his sole point on appeal, Father argues that the trial court erred in terminating his parental rights because the record does not support that Father's contact with Child ended voluntarily; thus, Father claims he did not abandon Child.

---

[3] This appeal contests only Father's parental rights. Thus, we need not discuss Child's mother's proceedings or the facts regarding the trial court's decision to terminate Child's mother's parental rights.

## Standard of Review

The trial court must follow a two-step analysis in deciding whether to terminate parental rights. In re S.Y.B.G., 443 S.W.3d 56, 59 (Mo. App. E.D. 2014). "First, the trial court must find by clear, cogent, and convincing evidence that one or more grounds for termination of parental rights exists." Id. (internal quotations omitted). Evidence is "[c]lear, cogent, and convincing" if it "instantly tilts the scales in favor of termination when weighed against the evidence in opposition and the trier of fact is left with an abiding conviction that the evidence is true." Id. (internal quotations omitted).

We review the first step of the trial court's termination of parental rights under the standard set forth in Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976):

> [T]he trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. Appellate courts should exercise the power to set aside a decree or judgment on the ground that it is 'against the weight of the evidence' with caution and with a firm belief that the decree or judgment is wrong.

S.S.S. v. C.V.S., 529 S.W.3d 811, 815 (Mo. banc 2017) (quoting Murphy, 536 S.W.2d at 32). "In reviewing questions of fact, the reviewing court is to recognize that the [trial] court is free to disbelieve any, all, or none of the evidence, and it is not the reviewing appellate court's role to re-evaluate the evidence through its own perspective." In the Interest of J.P.B., 509 S.W.3d 84, 90 (Mo. banc 2017) (internal quotations omitted). We may affirm the trial court's decision "even when evidence contrary to the trial court's finding is presented or the evidence might support a different conclusion." In re S.Y.B.G., 443 S.W.3d at 59 (internal citation omitted). We will reverse the trial court's decision "only if we are left with a firm belief that the judgment is wrong." Id.

4

Second, if the trial court finds clear, cogent, and convincing evidence to terminate parental rights, then the trial court must evaluate whether the termination is in the child's best interest based on the totality of the circumstances. Id. On appeal, we review the trial court's best-interest determination for an abuse of discretion. In re Adoption of C.M., 414 S.W.3d 622, 658 (Mo. App. S.D. 2013) (internal citation omitted); see also Section 211.447.7 (setting forth seven factors to evaluate whether termination of the parent-child relationship is in a child's best interest). "An abuse of discretion occurs only when the trial court's ruling is clearly against the logic of the circumstances and so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration." In re S.Y.B.G., 443 S.W.3d at 59 (internal citation omitted).

## Discussion

The trial court terminated Father's parental rights under an abandonment finding pursuant to Section 211.447. A child is considered "abandoned" if "for a period of six months or longer . . . [t]he parent has, without good cause, left the child without any provision for parental support and without making arrangements to visit or communicate with the child, although able to do so[.]" Section 211.447.5. "Abandonment means a voluntary and intentional relinquishment of the custody of the child to another with the intent to never again claim the rights of parent or perform the duties of a parent." S.S.S., 529 S.W.3d at 816 (internal quotations omitted). "Abandonment is largely a matter of intent." Id.

Abandonment encompasses two findings—failing to make provisions for parental support and failing to maintain communications. Incarcerated parents retain their obligation to provide support for their children and communicate with them. See In re B.H., III, 527 S.W.3d 167, 175 (Mo. App. W.D. 2017). The law recognizes the financial reality of parents in prison, yet requires at least a minimal continuum of support:

5

> [T]he substantially reduced wages received by incarcerated parents do not excuse their obligations under [Section] 211.447 to make monetary contributions towards support of their children. Granted, such a contribution from an incarcerated parent will not significantly assist in providing the parent's child with essentials, but even a minimal contribution evinces the parent's intent to continue the parent-child relationship.

Id. (quoting In re M.L.K., 804 S.W.2d 398, 402 (Mo. App. W.D. 1991)). Evidence of the parent's intent to continue the parent-child relationship "is lacking when the parent fails to make any contribution, *no matter how small the amount.*" In re Adoption of C.M., 414 S.W.3d at 657 (emphasis added). Further, "[p]arents are not allowed to maintain only a superficial or tenuous relationship with their children in order to avoid a determination of abandonment." S.S.S., 529 S.W.3d at 816. Rather, the trial court may regard infrequent visitations or communications as mere tokens of support and terminate parental rights despite the infrequent support. Section 211.447.8; In re M.L.K., 804 S.W.2d 398, 403 (Mo. App. W.D. 1991).

The record shows that Father proclaimed his continuing love for Child and communicated his desire to be her parent. The trial court found Father's declaration insufficient to overcome an abandonment finding. Specifically, the trial court noted Father did little to communicate with Child during his period of incarceration and did not provide Child with any monetary support. Seemingly important to the trial court's judgment was its finding that Father made no noticeable steps to establish a significant and sustained relationship with Child while in prison. The trial court found that Father wrote only one letter to Child during his entire period of incarceration, and deemed Father's minimal contact to be nothing more than a token effort. See Section 211.447.8; In re M.L.K., 804 S.W.2d at 403. Additionally, and importantly, Child indicated to the Children's Division that she had no relationship with or emotional connection to Father.

6

Father suggests that the Children's Division prevented him from reunifying with Child by not planning physical visits between Father and Child and not arranging to bring Child to family-support meetings. However, the record shows that Father did not request visitations, and the trial court disbelieved his testimony that he actively contacted Child via phone. See In the Interest of J.P.B., 509 S.W.3d at 90 (noting that we defer to the trial court's factual findings). The record further demonstrates that Father ignored the instructions provided by the Children's Division regarding how to maintain a parent-child relationship with Child while he remained in prison, and that Father disregarded the opportunity to write letters to Child. The trial court ultimately found that through Father's inactions, he failed to foster an adequate parent-child bond between himself and Child, causing Child to have no emotional ties to Father as a parental figure. We are not persuaded that the trial court erred in finding Father voluntarily ended his relationship with Child by not partaking in sufficient contact throughout his imprisonment. See Section 211.447.8; In re M.L.K., 804 S.W.2d at 403.

We recognize that the bond between parent and child is a fundamental societal relationship that evokes constitutionally protected fundamental liberty interests. See In re K.A.W., 133 S.W.3d 1, 12 (Mo. banc 2004). Further, we understand that courts should not terminate parental rights lightly. Id.; In re A.C.G., 499 S.W.3d 340, 347 (Mo. App. W.D. 2016) (quoting In re S.J.H., 124 S.W.3d 63, 66 (Mo. App. W.D. 2004)). And while it might also be reasonable here to believe Father's testimony that he loves Child and has tried everything to maintain a consistent, heartfelt, and supportive parent-child relationship, "this Court must defer to the [trial] court's assessment of the evidence and its findings when the evidence poses two reasonable but different inferences." S.S.S., 529 S.W.3d at 817; see also In the Interest of J.P.B., 509 S.W.3d at 90.

After a thorough review, we find that the record sufficiently supports the trial court's finding that clear, cogent, and convincing evidence supported the termination of Father's parental rights based on his abandonment of Child. See S.S.S., 529 S.W.3d at 815. Viewed in a light most favorable to the trial court's judgment, the evidence supports the trial court's findings that Father abandoned his relationship with Child by not communicating with Child and declining to provide even minimal financial or other necessary support for Child. In re S.Y.B.G., 443 S.W.3d at 59. In reaching this holding, we are poignantly aware of the limitations incarceration places on a parent to make provisions for continued parental support, and we address this requirement with the practicality and reasonableness demanded of the facts before us. However, Father's failure to make even the most minimal gesture of financial contribution to Child, when combined with the trial court's finding of Father's lack of communication with Child, undermines Father's challenge to the trial court's judgment. Accordingly, we conclude that the record demonstrates an abiding conviction that Father abandoned Child. See Section 211.447.5.

The trial court, after evaluating the factors set forth in Section 211.447.7, determined that terminating Father's parental rights was in the best interest of the child. After careful review, we

8

conclude the trial court did not abuse its discretion in finding termination was in Child's best interest.[4] Father's point on appeal is denied.[5]

Conclusion

The judgment of the trial court is affirmed.

_[signature]_

KURT S. ODENWALD, Presiding Judge

Gary M. Gaertner, Jr., J., concurs in result only.
Colleen Dolan, J., concurs in result only.

---

[4] Father does not explicitly contest the trial court's determination that termination of his parental rights was ultimately in Child's best interest. We nonetheless find that the record supports the trial court's best-interest determination. See Section 211.447.7 (listing seven factors the trial court must consider in evaluating whether it is in the child's best interest to terminate parental rights). Here, the trial court determined under factors three, four, and five that it was in Child's best interest to terminate Father's parental rights. See In re Adoption of C.M., 414 S.W.3d at 659 ("There is no requirement that all seven of [the Section 211.447.7] factors must be negated; likewise, there is no minimum number of negative factors required for termination."). The three factors are set forth below:

   3)  The extent of payment by the parent for the cost of care and maintenance of the child when financially able to do so including the time that the child is in the custody of the division or other child-placing agency;

   4)  Whether additional services would be likely to bring about lasting parental adjustment enabling a return of the child to the parent within an ascertainable period of time;

   5)  The parent's disinterest in or lack of commitment to the child

Section 211.447.7(3)–(5).

Here, there was overwhelming evidence before the trial court that it was in Child's best interest to terminate Father's parental rights. Further, the trial court's analysis for the termination finding overlapped significantly with its determination that termination of Father's parental rights was in Child's best interest. We need not restate the trial court's reasoning here. In re Adoption of C.M., 414 S.W.3d at 659–60 (citing In re P.L.O., 131 S.W.3d 782, 791 (Mo. banc 2004)) ("To restate the substantial evidence in support of the trial court's best-interest finding is unnecessarily repetitive. Rather, it is sufficient to state that the record amply supports the trial court's findings.").

[5] Father also alleges in the argument section of his brief that counsel at the permanency review hearing did not represent him and the trial court erred in not providing him with counsel at that hearing. Because Father did not raise this contention in his points-relied-on section, we will not consider this argument on appeal. See Mo. R. Civ. P. Rule 84.04(e) (2018) (stating that an appellant's argument section must "substantially follow" the order of and is limited to the errors included in the Points Relied On); see also Piatt v. Ind. Lumbermen's Mut. Ins. Co., 461 S.W.3d 788, 794 n.4 (Mo. banc 2015).

9