

# In the Missouri Court of Appeals
## Eastern District

### DIVISION THREE

IN THE INTEREST OF: K.A.M.L.

) No. ED109556
)
) Appeal from the Circuit Court of
) St. Louis County
)
) Honorable Heather R. Cunningham
)
)
) Filed: April 12, 2022

### Introduction

M.L.R. ("Father") appeals the trial court's judgment terminating his parental rights of his children, T.M.L., K.A.L., and K.M.L. (collectively "the Children"). Father raises five points on appeal. In Point I, Father argues the trial court erred and abused its discretion in denying his motions for a continuance of trial and to reopen the evidence, violating his right to due process. We deny Point I. In Points II-V, Father argues the trial court erred in terminating his parental rights under Sections 211.447.5(2), abuse or neglect, 211.447.5(3) failure to rectify, 211.447.5(5) parental unfitness, and 211.447.7, best interests, respectively. We deny Points III and V. Because Points III and V, failure to rectify and best interests, are dispositive we need not address Points II and IV, abuse or neglect and parental unfitness.

We affirm.

## Factual and Procedural Background

M.L.R. is the Children's father. The Children are between six and ten years old. On October 26, 2016, the Juvenile Officer of St. Louis County ("Officer") filed a petition alleging the Children's mother had a history of substance use and neglected the children because her home lacked heat or electricity and was unsanitary. When the petition was filed, the Children's father was unknown. Father lived in a separate residence from the Children. M.L.R. was later identified as the Children's father. The trial court found the allegations against the Children's mother true on December 20, 2016.

On January 19, 2017, the court took jurisdiction over the Children and ordered Father to participate in services with the Children's Division (the "Division"). The court-ordered services included mental health and parenting assessments; individual counseling; substance abuse treatment; and drug screens. On April 1, 2019, the Officer filed a petition to terminate Father's parental rights under Mo. Rev. Stat. § 211.447.5(2), § 211.447.5(3), and § 211.447.7.[1]

On November 29, 2019, the trial court conducted a hearing on the petition, but Father failed to appear. Father's court-appointed attorney orally requested a continuance. Father's counsel stated he spoke with Father the day before trial by telephone and Father confirmed he would be present. Counsel was unsure why Father failed to appear. The Juvenile Officer of St. Louis County ("Respondent") objected, and the trial court denied the request for a continuance. At trial, the evidence showed Father had a history of substance abuse and multiple criminal convictions for possession of controlled substances, was on probation through the Missouri Department of Corrections, failed to complete the court ordered substance abuse treatment program, had multiple positive drug screenings, and missed about seventy drug screenings.

---

[1] All statutory citations are to RSMo (2018), unless otherwise indicated.

On December 18, 2019, Father's counsel filed a Motion to Reopen Trial Evidence, alleging he missed the November 29 hearing due to the flu. The trial court did not rule on Father's motion to reopen but entered judgment terminating his parental rights on February 5, 2020. The court's judgment found Father suffers from a chemical dependency which has not been treated and prevents him from consistently providing care for the Children; has repeatedly and continuously failed, although physically and financially able, to provide the Children with adequate food, clothing, shelter, or other care necessities for the Children; failed to participate and complete court-ordered services successfully; and, for the reasonably foreseeable future, is unable to appropriately care for the ongoing physical, mental and emotional needs of the Children. The court further found that the termination of Father's parental rights was in the Children's best interest, as the continuation of the parent-child relationship greatly diminished the Children's prospects for early integration into a stable and permanent home.

Father appealed, challenging the trial court's denial of his request for continuance and motion to reopen the evidence. On December 22, 2020, this Court reversed and remanded for the trial court to conduct a hearing on Father's motion to reopen the evidence and make a credibility determination regarding Father's explanation for missing trial. The trial court conducted a hearing on Father's Motion to Reopen Trial Evidence on January 30, 2021, but the recording was inaudible, so the court held a second hearing on May 25, 2021. Father testified he failed to appear at trial because he was seeking medical treatment at Urgent Care for the flu and hip pain.[2] Father presented no documentation supporting his claim he was ill or visited Urgent Care on the date of trial. With no supporting evidence, the trial court found Father's testimony not credible

---

[2] Father's testimony conflicts with the allegation in his motion to reopen the evidence which only alleged he had the flu.

and denied his motion to reopen. This appeal follows. Additional factual and procedural history will be provided as necessary to address Father's arguments.

**Standard of Review**

In termination of parental rights cases, we will sustain the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *S.S.S. v. C.V.S.*, 529 S.W.3d 811, 815 (Mo. banc 2017) (citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)). The evidence is viewed in the light most favorable to the trial court's judgment and will be reversed only if we are firmly convinced the judgment is erroneous. *In re S.Y.B.G.*, 443 S.W.3d 56, 59 (Mo. App. E.D. 2014). The party seeking termination bears the burden of proof. *Id*. We recognize the trial court is better positioned than this Court to determine witness credibility and weigh evidence in the context of the whole record. *J.A.R. v. D.G.R.*, 426 S.W.3d 624, 626 (Mo. banc 2014). The grounds for termination must be supported by clear, cogent and convincing evidence, meaning the evidence must "instantly tilt the scales in favor of termination when weighed against the evidence in opposition and the finder of fact is left with the abiding conviction that the evidence is true." *S.Y.B.G.*, 443 S.W.3d at 59. The standard of proof for the "best interest" inquiry is a preponderance of the evidence; on appeal, the standard of review is abuse of discretion. *J.A.R.,* 426 S.W.3d at 626.

**Discussion**

*Point I: Denial of Father's Motions for Continuance and to Reopen the Evidence*

A.     Motion for Continuance

This Court previously reviewed and affirmed the trial court's decision to deny Father's Motion for Continuance of Trial. *Interest of T.M.L.,* 615 S.W.3d 100, 103 (Mo. App. E.D. 2020)

(*T.M.L. I*). We noted Rule 65.03 requires the submission of a written motion for continuance "accompanied by the affidavit…unless the adverse party consents that the application for continuance may be made orally." Mo. Sup. Ct. R. 65.03.[3] Failure to meet Rule 65.03 requirements will not constitute an "abuse of discretion in denying a continuance." *In Interest of C.L.L.*, 776 S.W.2d 476, 477 (Mo. App. E.D. 1989). Father's attorney failed to follow the procedural requirements of Rule 65.03, and all adverse parties objected to the oral motion. 615 S.W.3d at 103. Therefore, this Court held Father's noncompliance with Rule 65.03 established the trial court did not abuse its discretion in denying his counsel's oral request for a continuance on the day of the trial. *Id.*

B.      Motion to Reopen the Evidence

In *T.M.L. I*, this Court remanded to the trial court with instructions to conduct a hearing on the merits of Father's motion to reopen and make a credibility determination about his explanation for missing trial. *Id*. On remand, Father testified he missed trial because he had debilitating nerve pain in his hip and the flu. Father testified he sought medical treatment for his illness and pain. Father provided no documentary evidence, such as a doctor's note, in support of his testimony. On June 1, 2021, the trial court denied Father's motion. The court found Father's testimony "unconvincing and not credible" and stated Father failed to present a legal basis to reopen the case.

Father argues the trial court erroneously denied his Motion to Reopen the Evidence because his testimony provided sufficiently credible evidence to entitle him to reopen the evidence. Father claims the trial court should have granted his Motion to Reopen the Evidence because his motion would not have prejudiced either party. Father asserts the termination of his parental rights tantamounted to a "civil death penalty," and thus was entitled to relief.

---

[3] All rule citations are to the Missouri Supreme Court Rules (2021), unless otherwise indicated.

We disagree. A court's decision to terminate parental rights is an exercise of an awesome power which we do not review lightly. *T.M.L. I,* 615 S.W.3d at 103 (citing *In re J.R.,* 347 S.W.3d 641, 645 (Mo. App. E.D. 2011)). We view the evidence in the light most favorable to the trial court's judgment and reverse only if we are firmly convinced the verdict is erroneous. *S.Y.B.G.*, 443 S.W.3d at 59 (citing *In re C.J.G.*, 75 S.W.3d 794, 797 (Mo. App. W.D. 2002)). We recognize the trial court's ability to freely determine evidence credibility and refrain from re-evaluating the evidence through our own perspective. *Interest of R.D.M.*, 576 S.W.3d 318, 323 (Mo. App. E.D. 2019) (citing *In the Interest of J.P.B.*, 509 S.W.3d 84, 90 (Mo. banc 2017)).

Father never supplied the trial court with any evidence to support his illness or his visit to the Urgent Care, despite having several months to collect and organize such evidence, if it existed. With no supportive evidence, a fact finder could have reasonably found Father's testimony not credible. The trial court was "better equipped to judge credibility than those who did not witness the testimony." *Shockley v. State,* 579 S.W.3d 881, 908 (Mo. banc 2019). We refuse to question the trial court's determination on a witness's credibility. *R.D.M.*, 576 S.W.3d at 323.

Further, reopening the evidence after two years would substantially inconvenience the opposing parties. *In Interest of S--- G.*, 779 S.W.2d 45, 55 (Mo. App. S.D. 1989). The trial court did not abuse its discretion in denying Father's motion to reopen the evidence after the hearings. *Id.*

### C. Due Process Violation

Father argues the trial court violated his substantive and procedural due process right in having a trial that terminated his parental rights without his physical presence. Father

6

emphasizes, and we agree, courts have long acknowledged the relationship between a natural parent and child as a fundamental right and liberty interest and thus constitutionally protected. *Matter of A.R.V.,* 561 S.W.3d 817, 825 (Mo. App. E.D. 2018); *Troxel v. Granville,* 530 U.S. 57, 65 (2000). Father, without citing to any case law, claims his mere absence at trial proves the court's violation of his due process right.

"The requirements of procedural due process apply only to the deprivation of interests encompassed by the constitutional protection of liberty and property, and the range of interests protected by procedural due process is not infinite." *Laubinger v. Laubinger,* 5 S.W.3d 166, 176 (Mo. App. W.D. 1999). A two-step analysis is required to determine whether a party was denied their constitutional right to procedural due process. *Id.* Courts must first determine whether the party was deprived of a constitutionally protected interest. *Belton v. Board of Police Comm'rs,* 708 S.W.2d 131, 136 (Mo. banc 1986). Courts must then determine whether the procedures followed provided the individual an opportunity for a hearing before being deprived of any significant interest. *Jamison v. State, Dep't of Soc. Servs., Div. of Fam. Servs.*, 218 S.W.3d 399, 407 (Mo. banc 2007) (citing *Fuentes v. Shevin,* 407 U.S. 67, 81, 82 (1972)).

No rule requires a parent's physical presence at a termination of parental rights trial, so long as the court provided the parent appropriate procedural due process. *In re D.L.W.*, 413 S.W.3d 2, 12 (Mo. App. E.D. 2012). Due process requires the trial court give Father notice of the hearing, with sufficient time to prevent his absence, and the opportunity to be heard. *Jamison,* 218 S.W.3d at 407 (citing *Fuentes,* 407 U.S. at 81-82). Father conceded he was timely notified and aware of the trial date. Despite knowing the date, Father failed to notify the court of his alleged illness and absence, missed trial, and, thus, waived his due process right to be heard "by voluntarily absenting himself from the proceedings." *Moore v. Bd. of Educ. of Fulton Pub. Sch.*

7

*No. 58*, 836 S.W.2d 943, 947 (Mo. banc 1992). Father's due process right only afforded him the opportunity to be heard, which the court granted. *Id.* The trial court did not violate Father's due process rights.

Point I is denied.

*Points III & V: Failure to Rectify and Best Interests of the Children*

In Points II-IV, Father argues the trial court lacked clear, cogent, and convincing evidence to support the grounds for termination under sections 211.447.5(2) abuse or neglect, 211.447.5(3) failure to rectify, and 211.447.5(5) parental unfitness. In his Point V, Father contends there was insufficient evidence to show it was in the children's best interest to terminate his parental rights under section 211.447.7. Because Points III and V, failure to rectify and best interests, constitute sufficient grounds to affirm the termination of Father's parental rights, we need not address Points II or IV, abuse or neglect or parental unfitness.

To terminate a party's parental rights, a trial court must: (1) find by "clear, cogent, and convincing evidence" that one or more grounds for termination of parental rights exists, and (2) determine whether it is in the child's best interest to terminate a party's parental rights. *Id.* Evidence that is "clear, cogent, and convincing" instantly tilts the scales in favor of termination when weighed against the evidence in opposition, and the trier of fact is left with an abiding conviction that the evidence is true. *In re S.M.H.*, 160 S.W.3d 355, 362 (Mo. banc 2005). Section 211.447 provides the statutory grounds for judicial termination of parental rights. The trial court found grounds existed for the termination of Father's parental rights under section 211.447.5(2) abuse or neglect, section 211.447.5(3) failure to rectify, and 211.447.5(5) parental unfitness. These are separate grounds for termination, and we will affirm the trial court's ruling if one is appropriate. *Missouri Dep't of Soc. Servs., Children's Div. v. B.T.W.*, 422 S.W.3d 381,

8

394 (Mo. App. W.D. 2013) (citing *In re B.J.H., Jr.*, 356 S.W.3d 816, 825 (Mo. App. W.D. 2012)) ("[O]nly one statutory ground need be proven to support termination[.]"). If the trial court finds at least one statutory ground for termination exists, the court must then determine whether, by a preponderance of the evidence, the termination of parental rights is in the child's best interest. Mo. Rev. Stat. § 211.447.7; *S.Y.B.G.*, 443 S.W.3d at 59 (citing *In re K.A.C.*, 246 S.W.3d 537, 543 (Mo. App. S.D. 2008)).

Section 211.447.5(3)- Failure to Rectify

For parental rights to be terminated under § 211.447.5(3), the court must have had jurisdiction over the Children for one year, and it must be determined that:

> [T]he conditions which led to the assumption of jurisdiction still persist, or conditions of a potentially harmful nature continue to exist; and that there is little likelihood that those conditions will be remedied at an early date so that the child can be returned to the parent in the near future, or the continuation of the parent-child relationship greatly diminishes the child's prospects for early integration into a stable and permanent home. Mo. Rev. Stat. § 211.447.5(3).

In determining whether to terminate parental rights under 211.447.5(3), the court must consider and make findings on these four factors:

(a) The terms of a social service plan entered into by the parent and the division and the extent to which the parties have made progress in complying with those terms;

(b) The success or failure of the efforts of the juvenile officer, the division, or other agency to aid the parent on a continuing basis in adjusting his circumstances or conduct to provide a proper home for the child;

(c) A mental condition which is shown by competent evidence either to be permanent or such that there is no reasonable likelihood that the condition can be

9

reversed and which renders the parent unable to knowingly provide the child the necessary care, custody, and control;

(d) A chemical dependency which prevents the parent from consistently providing the necessary care, custody, and control over the child and which cannot be treated so as to enable the parent to consistently provide such care, custody, and control(.)

These factors "are not separate grounds for termination by themselves, but rather categories of evidence that the court may consider along with all other relevant evidence in determining whether grounds for termination exist under Section 211.447.5(3)." *In Interest of K.M.A.-B.,* 493 S.W.3d 457, 474 (Mo. App. E.D. 2016) (citing *In Interest of S.D.,* 472 S.W.3d 572, 577 (Mo. App. W.D. 2015)). While a court must make findings on all four factors, evidence supporting just one factor is sufficient to terminate parental rights. *In the Interest of D.L.P.,* 638 S.W.3d 82, 90-91 (Mo. App. E.D. 2021) (citing *S.Y.B.G.*, 443 S.W.3d at 60-61).

(a) *Social Service Plan Compliance*

Concerning the first factor, Father never voluntarily agreed to a service plan with the Division and, instead, was court-ordered to comply with services. The court-ordered services required Father to complete individual counseling, substance abuse treatment, drug screens, and attend supervised visits with the Children. The court-ordered service plan further required Father to cooperate with and utilize the services offered by the Division.

Father argues his participation in individual counseling and visits with the Children prove his compliance with services without considering the entirety of his court-ordered services. Within the thirty-five months the Children were in the Division's care, Father failed to complete substance abuse treatment, tested positive for illegal substances, including methamphetamine,

10

cocaine, opiates, and marijuana, on multiple occasions, and missed approximately seventy drug screens. The evidence showed Father was aware his failure to complete substance abuse treatment and drug screens prevented reunification and could lead to his parental rights being terminated. While Father engaged in one of the required court-ordered services, he failed to engage in services addressing his substance abuse issues and the Division's safety concerns. *S.Y.B.G.,* 443 S.W.3d at 63. Thus, the court had sufficient evidence to find Father failed to comply with court-ordered services. *Id.*

### (b) *Agency Efforts*

Neither party disputed the trial court finding regarding the Division's efforts. The evidence supported the Division's reasonable efforts to fulfill its responsibility under the court-ordered service plan.

### *(c) Mental Condition*

Neither party disputed the court's finding Father complied with individual counseling and there was no evidence showing he suffered from a mental condition that was unreversible or that rendered him incapable of knowingly providing for the Children.

### *(d) Chemical Dependency*

The court determined Father's noncompliance with services, as discussed above in subsection (a), and other additional evidence sufficiently proved Father suffers from a chemical dependency which cannot be successfully treated and prevents him from consistently providing the necessary care, custody, and control over the Children. The court specifically noted that Father's failure to complete the required substance abuse treatment, history of substance abuse, positive drug screens, missed drug screens, and lack of commitment to address his substance abuse issues were all factors that supported its finding.

11

Father does not dispute that the Children have been under the court's jurisdiction for over a year, or he suffers from a chemical dependency. Instead, Father argues the court's chemical dependency determination failed to consider Father's "significant progress in completing services" and his ability to sustain gainful employment and appropriate housing as factors mitigating his chemical dependency.

Father's claim asks this Court to reweigh the evidence showing Father's completed services, employment, and appropriate housing as more significant than the evidence the trial court relied on. Trial courts can freely weigh the statute's factors and other relevant evidence to determine if grounds for termination exist, but sufficient evidence proving one factor is enough. *K.M.A.-B.,* 493 S.W.3d at 764; *D.L.P.,* 638 S.W.3d at 90-91. Father heavily relies on *In re D.L.M.* to argue the court erred in terminating his parental rights when his chemical dependency does not presently prevent him from having stable employment or providing appropriate housing for the Children. 31 S.W.3d 64, 70 (Mo. App. E.D. 2000). However, In *D.L.M.*, the court determined the parent's chemical dependency did not prevent her from providing the child with necessary care because, despite her subsequent relapse, the mother had successfully completed a substance abuse treatment and scheduled drug screens. *Id.*

*D.L.M.* is factually distinguishable. Contrary to Father's assertions, the evidence at the termination hearing supported the court's chemical dependency determination. At trial, Division caseworkers testified Father continuously failed to attend scheduled drug screens, despite the caseworkers' attempts to accommodate Father's needs, and refused to even try to complete a substance abuse treatment program. One Division caseworker testified Father's home smelled like marijuana during a home visit. The evidence showed Father missed approximately seventy scheduled drug screens, tested positive for illegal substances, including methamphetamine,

cocaine, opiates, and marijuana on numerous occasions, and admitted to ingesting marijuana to the caseworker. Further, Father's criminal and probation records established Father has a lengthy substance abuse history, including marijuana, cocaine, methamphetamine, and unprescribed opiates. Division caseworkers further testified they informed Father his failure to complete drug screens and substance abuse treatment prevented reunification with the Children and could lead to his parental rights being terminated.

There was substantial evidence in the record from which the court could conclude Father's chemical dependency issues were untreatable, preventing him from consistently providing adequate care, custody, and control over the Children, within an ascertainable period of time. In the thirty-five months the Children were under the court's jurisdiction, Father demonstrated an inability to appropriately alter his conduct and repeatedly refused to complete the court-ordered drug screens and substance abuse treatment, further supporting the court's finding Father's chemical dependency issues could not be adequately remedied in the near future to allow reunification with the Children. *S.Y.B.G,* 443 S.W.3d at 65. The court's findings were supported by clear, cogent, and convincing evidence. *Id.* Hence, the court did not err in finding the grounds for termination of Father's parental rights under § 211.447.5(3) failure to rectify. *Id* at 65-66.

Point III denied.

Section 211.447.7- Best Interest Determination

Once grounds for termination of parental rights are identified, a trial court must then analyze the seven factors under § 211.447.7 and determine whether termination is in the child's "best interest." *In re J.S.W.*, 341 S.W.3d 881, 886-87 (Mo. App. E.D. 2011). The "best interest" determination is a subjective assessment based on the totality of the circumstances and is

discretionary. *S.Y.B.G.*, 443 S.W.3d at 59, 66. In reviewing the trial court's best interest determination, our standard of review is abuse of discretion. *J.A.R.*, 426 S.W.3d at 626. An abuse of discretion occurs only when the trial court's ruling is "clearly against the logic of the circumstances and so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration." *D.L.P.*, 638 S.W.3d at 89 (quoting *In re S.R.J., Jr.*, 250 S.W.3d 402, 406 (Mo App. E.D. 2008)). The seven factors courts evaluate in the "best interest" determination are:

(1) Emotional ties to the birth parent;

(2) The extent to which the parent has maintained regular visitation or other contact with the child;

(3) The extent of payment by the parent for the cost of care and maintenance of the child when financially able to do so including the time that the child is in the custody of the division or other child-placing agency;

(4) Whether additional services would be likely to bring about lasting parental adjustment enabling a return of the child to the parent within an ascertainable period of time;

(5) The parent's disinterest in or lack of commitment to the child;

(6) The conviction of the parent of a felony offense that the court finds is of such a nature that the child will be deprived of a stable home for a period of years; provided, however, that incarceration in and of itself shall not be grounds for termination of parental rights;

(7) Deliberate acts of the parent or acts of another of which the parent knew or should have known that subjects the child to a substantial risk of physical or mental harm.

Mo. Rev. Stat. § 211.447.7.

The trial court found (1) the Children were emotionally bonded to Father; (2) Father had consistent contact with the Children; (3) Father, although financially able, failed to substantially provide towards the cost of care and maintenance of the Children and has not provided minimal financial support for the Children since coming under the court's jurisdiction in January 2017; (4) it is unlikely that additional services would bring about a lasting adjustment by Father enabling reunification with his Children within an ascertainable period of time; (5) Father's failure to participate in substance abuse treatment, participate in drug screens, and continuing to test positive for illegal substances demonstrated his disinterest in or lack of commitment to the Children; (6) Father had no felony convictions that would deprive the Children from a stable home for a period of years; and (7) Father subjected the Children to substantial risk of physical and mental harm and his failure to participate in treatment and address his substance abuse issues place the Children at risk of harm. Hence, the court determined it was in the Children's best interest to terminate Father's parental rights.

First, Father claims the trial court erroneously found he failed to contribute financial support for the Children. Father argues the trial court minimized the significance of the gifts and clothing he gave the Children and failed to support its findings with facts regarding his ability to financially contribute while the children were under the court's jurisdiction.

We disagree. Contrary to Father's claim, he retained the duty to provide financial support for the Children while they were involuntarily under the court's jurisdiction, even if no court-ordered support existed. *In re G.G.B.*, 394 S.W.3d 457, 474 (Mo. App. E.D. 2013). The record demonstrated Father failed to utilize his income fully and provide "some" financial contribution to the Children, other than the clothes, toys, and "gifts" he provided. *Id.* at 473-74. While the evidence of Father's actual salary or ability to provide financial contributions was unclear, the

multiple positive drug screens demonstrated Father's ability to fund his substance abuse issues with his income instead of financially supporting the Children. *Id*. Further, the trial court was free to weigh all the presented evidence, and this Court does not question the significance or weight placed on any evidence, including evidence showing Father provided clothes, toys, and "gifts." *R.D.M.*, 576 S.W.3d at 323. Thus, the trial court had sufficient evidence to determine Father was able to contribute financial support for the Children and failed to do so. *G.G.B*., 394 S.W.3d at 473-74.

Second, Father argues the trial court's finding additional services were unlikely to bring about lasting changes and allow reunification were unsupported by sufficient evidence. Father cites to *D.L.M.* to claim the trial court erred in focusing on Father's substance abuse issues and assert a parent's substance abuse, alone, is insufficient basis to show additional services would unlikely lead to lasting changes in Father's behavior.

We disagree. As explained in subsection (d), *D.L.M.* is factually distinguishable, as the parent completed substance abuse treatment. 31 S.W.3d at 70. Here, Father was court-ordered to complete individual therapy, substance abuse treatment, and drug screens. Although Father engaged in individual therapy, he failed to complete substance abuse treatment, missed approximately seventy drug screens, and had multiple positive drug screenings. The evidence revealed Father's consistent refusal to engage in services, address his substance abuse, and ongoing drug usage indicated placing the Children with Father would expose them to future risk of harm. While Father's future behavior is unascertainable, Father's consistent refusal to address his substance abuse is predictive of future issues and indicative of his future ability to care for the Children. *In re K.A.W.*, 133 S.W.3d 1, 10 (Mo. banc 2004). Father's refusal to complete substance abuse services reasonably supports the trial court determining the unlikelihood of

16

Father engagement in future additional services. *Id.* Accordingly, the trial court had sufficient evidence showing extra services were unlikely to bring about lasting changes to Father's behavior within an ascertainable time, and reunification would expose the Children to future risk of harm. *See id.*

Third, Father disputes the court's finding he lacked commitment to the Children. Father asserts this finding was against the logic of the circumstances and an abuse of the court's discretion because he tried to comply with court-ordered services and remained involved in the Children's lives.

We disagree. As previously addressed, Father consistently failed to complete substance abuse services and was aware his drug usage prevented reunification and could lead to termination of parental rights; still, his behavior remained unchanged. A Division caseworker testified Father knew the Children desired to live with him and would get sad when his positive drug screening prevented visits. Despite that knowledge, Father continued to engage in drug usage, placing his needs before the Children's interests and wishes for reunification. *See Interest of J.G.W.*, 613 S.W.3d 474, 490 (Mo. App. E.D. 2020). Similarly, while Father contends his attendance at supervised visits with the Children and participation in therapy were sufficient to demonstrate his commitment to the Children, he refused to address his substance abuse issues or engage in substance abuse treatment. This conduct indicates he prioritized his desires before the Children's interest in reunification. *Id.* Accordingly, the trial court did not abuse its discretion because the court had sufficient evidence to logically conclude Father lacked interest in and commitment to the Children. *G.G.B.*, 394 S.W.3d at 474.

Last, Father argues the trial court lacked evidence to support the finding that he deliberately engaged in behavior which placed the Children at risk of harm. We disagree. Father

17

was aware his drug abuse issues prevented reunification and could lead to termination of parental rights. But Father continued to use drugs and test positive for illegal substances. Father's voluntary consumption of illegal substances meets the statutory meaning of a "deliberate" act, which he knew or should have known would subject the Children to a substantial risk of harm. *In Interest of T.G.*, 965 S.W.2d 326, 337 (Mo. App. W.D. 1998). The evidence established Father refused to engage in substance abuse services or stop ingesting illegal substances, placing the Children at future risk of harm. Father's failure to comply with court-ordered programs qualify as deliberate acts he knew or should have known subject the Children to a substantial risk of harm. *See In Interest of Z.L.G.*, 531 S.W.3d 653, 661 (Mo. App. S.D. 2017). Hence, the trial court did not err in finding Father engaged in deliberate acts he knew or should have known subject the Children to a substantial risk of harm. *Id.; T.G.,* 965 S.W.2d at 337.

Sufficient evidence existed to support the court's findings on the statutory factors and "best interest" determination. "There is no requirement that all seven statutory "best interest" factors must be negated before termination of parental rights can take place; likewise there is no minimum number of negative factors necessary for termination." *In re C.M.H.*, 408 S.W.3d 805, 815 (Mo. App. S.D. 2013). Accordingly, the trial court did not err in determining it was in the Children's best interest to terminate Father's parental rights.

Point V is denied.

### Decision

For the reasons stated above, the judgment is affirmed.

_____
Philip M. Hess, Presiding Judge

Angela T. Quigless, Judge and
Colleen Dolan, Judge concur.

18